**Kenneth Wayne MORRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71799.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 11, 1996.

Rehearing Denied Jan. 8, 1997.

Allen C. Isbell, Houston, for Appellant.

William J. Delmore, III, Asst. District Attorney, Houston, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

*OPINION*

KELLER, Judge.

In December of 1993, appellant was convicted of capital murder under Texas Penal Code 19.03(a)(2). The offense, the murder of James Moody Adams in the course of robbery, was committed in May of 1991. The trial court submitted to the jury the special issues set out in Article 37.0711, subsections 3(b)(1), (2) and (3)(e) of the Texas Code of Criminal Procedure.[1] In accordance with the jury's answers to those issues, the trial court assessed the appellant's punishment at death. Article 37.0711(3)(j) provides direct appeal to this Court. Appellant raises nineteen points of error. We will affirm.

## 1. *BATSON CHALLENGE*

■ In points of error one and two, appellant asserts that the trial court erred in overruling his objection to the State's peremptory challenge of prospective juror Robert Dreannan. Appellant contends that the challenge was racially motivated in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ We review the record of the *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling. *Adanandus v. State,* 866 S.W.2d 210, 223 (Tex.Crim.App.1993); *Cantu v. State,* 842 S.W.2d 667, 689 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125

L.Ed.2d 731 (1993). We will not disturb a trial court's ruling on a *Batson* issue unless it is clearly erroneous. *Id.*

On his jury questionnaire, venireman Dreannan indicated that he was strongly in favor of the death penalty. During voir dire however, he said he had spent a sleepless night worrying about his answer to that question. When asked whether youth would improperly factor into his consideration of the punishment issues, venireman Dreannan refused to answer:

Q: [A]re you saying that youth—you would never, never return a verdict that would cause a young person to be put to death?

A: That's too hard of a question to ask. I'm not going on it because I have an 18-year-old son.

At the *Batson* hearing, the prosecutor said he thought venireman Dreannan had been deceptive in answering the youth question. The trial court noted for the record that its observations of Dreannan's demeanor were consistent with the prosecutor's explanation. She also commented that the prosecutor had seated a large number of blacks in a recently completed capital murder trial. The trial judge found the prosecutor's reasons to be racially neutral and denied the *Batson* challenge. According due deference to the decision of the trial court, we find that its decision was not clearly erroneous. Point of error one is overruled.

■ In point of error two, appellant claims the trial judge improperly based her ruling upon the absence of purposeful discrimination by this prosecutor in a separate criminal trial. A ruling on a *Batson* objection is a credibility determination. Because the trial judge determines the issue of the prosecutor's credibility, it is not error for the court to consider its past experiences with a prosecutor in determining his credibility. See *Fowler v. State,* 863 S.W.2d 187, 189 (Tex. App.—Houston [14th] 1993, pet. ref'd). Point two is overruled.

---

1. All references to Articles are to the Texas Code of Criminal Procedure unless otherwise provided.

## 2. EFFECT OF PAROLE

In points of error three through eight, appellant asserts that the trial court erred in disallowing questions on voir dire concerning the minimum time a convicted capital murderer sentenced to life in prison must serve before he is eligible for parole. Appellant claims this information is relevant to the issue of future dangerousness. He further asserts that the trial court violated both the United States and Texas Constitutions in refusing to allow such questions on voir dire.

Appellant claims he should have been allowed to inform prospective jurors that if sentenced to life, he would serve a minimum of 15 years before becoming eligible for parole. He asserts that without this knowledge, jurors might entertain the mistaken belief that he would be released much earlier, and respond by handing down a sentence of death instead of life. Appellant contends in point of error three that knowledge of the parole law is therefore necessary to an accurate determination of future dangerousness.

This Court has held that parole is not a matter for a jury's consideration in a capital murder trial. *Smith v. State*, 898 S.W.2d 838, 846 (Tex.Crim.App.) (plurality opinion), *cert. denied* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Broxton v. State*, 909 S.W.2d 912, 919 (Tex.Crim.App. 1995); *Jones v. State*, 843 S.W.2d 487, 495 (Tex.Crim.App.1992). As to future dangerousness, we have held that in deciding whether a defendant poses a continuing threat to society, a jury considers not only free society, but also prison society. Because the length of appellant's incarceration does not reduce or increase his future dangerousness, it is not relevant to that issue. *Id* at p. 495. Point of error three is overruled.

Appellant argues in points of error four and five that Due Process and the Eighth Amendment require that a jury be informed of his "parole ineligibility." These issues have been resolved contrary to appellant's position. *Smith*, 898 S.W.2d at 853; *Broxton*, 909 S.W.2d at 919. Points of error four and five are overruled.

In points of error six through eight appellant claims the trial court's refusal to inform the jury about parole violated Article I, Sections 10, 13 and 19 of the Texas Constitution. Appellant points out that this Court can interpret the Texas Constitution more broadly than the Federal Constitution. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Crim. App.1991). Appellant argues that the Texas Constitution guarantees a party the right to use his peremptory and for-cause challenges intelligently. As appellant points out, a voir dire question is proper if its purpose is to disclose a juror's views on an issue applicable to the case. *See, e.g., Shipley v. State*, 790 S.W.2d 604, 608 (Tex.Crim.App.1990). A Texas jury must determine future dangerousness. Parole ineligibility as it relates to future dangerousness is thus, appellant argues, a proper subject for voir dire.

As noted above, parole is not a matter for a jury's consideration in a capital murder trial. *Broxton*, 909 S.W.2d at 919. For this reason, parole ineligibility is not "an issue applicable to the case," and questions about it are not proper questions. The Texas Constitution thus does not give an accused the right to ask prospective jurors in a capital murder trial questions regarding parole ineligibility. Points six through eight are overruled.

## 3. MITIGATING EVIDENCE

In point of error nine, appellant contends that the trial court erred in excluding evidence that the State chose not to seek the death penalty against his two co-defendants. Appellant claims his co-defendants' lighter punishment is constitutionally relevant mitigating evidence which should have been admitted during the punishment phase of trial.

Appellant argues that his personal culpability in the murder was equal or similar to that of his co-defendants who did not receive the death penalty. In response to this we must point out that appellant's role in the crime was not identical to his co-defendants' roles. The evidence shows that while three men were involved in the robbery, it was appellant who held the gun and shot the victim four times. In any case, it is possible for two people who have committed identical

murders to receive different sentences based on differing degrees of mitigating character and background evidence.

Moreover, this Court has held that evidence of a co-defendant's conviction and punishment is not included among the mitigating circumstances which a defendant has a right to present. In *Evans v. State,* 656 S.W.2d 65, 67 (Tex.Crim.App.1983), we stated:

"We do not see how the conviction and punishment of a co-defendant could mitigate appellant's culpability in the crime. Each defendant should be judged by his own conduct and participation and by his own circumstances."

*Id.*

Appellant relies upon *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), in which the United States Supreme Court recognized evidence that the defendant's accomplices were not sentenced to death as part of the mitigating evidence which was admitted at trial. However, *Parker* did not address whether evidence of disparate sentencing is mitigating evidence which *must* be considered under the standard set out in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The punishment which appellant's co-defendants received relates neither to appellant's character, nor to his record, nor to the circumstances of the offense. Point of error nine is overruled.

### 4. *SUFFICIENCY OF THE EVIDENCE*

In point of error ten, appellant asserts that the evidence was insufficient to support the jury's negative finding on the mitigation issue. Because the weighing of mitigating evidence is a subjective determination undertaken by each juror, we will not review mitigating evidence for sufficiency. *Colella v. State,* 915 S.W.2d 834 (Tex.Crim. App.1995). Point of error ten is overruled.

### 5. *THE SPECIAL ISSUES*

In point of error nineteen, appellant claims the mitigation issue violates the Eighth Amendment to the United States Constitution because "meaningful appellate review of the jury's answer to that special issue is impossible." We have recently decided this contention adversely to appellant's position. *McFarland v. State,* 928 S.W.2d 482 (Tex.Crim.App.1996) at 498–500 (Keller, J. concurring at 524–525). Point of error nineteen is overruled.

In point of error fourteen, appellant claims Article 37.0711(3)(e) is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, appellant argues that the statute is unconstitutional because it assigns no burden of proof, burden of persuasion or standard of proof to the issue of mitigation. We have already held that the Eighth Amendment does not require that the State be assigned the burden of proof on *Penry* issues. *Barnes v. State,* 876 S.W.2d 316, 330 (Tex.Crim.App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Because the Eighth Amendment does not require limitations on a jury's discretion to consider mitigating evidence, *see McFarland,* 928 S.W.2d at 518–519, the Constitution does not require a burden of proof to be placed upon anyone. Point of error fourteen is overruled.

Appellant complains in point of error thirteen that the mitigation issue violates the Eighth and Fourteenth Amendments to the United States Constitution because it "permits the open-ended discretion" condemned in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, the United States Supreme Court has held that allowing a jury the discretion to recommend mercy after considering mitigating evidence is not unconstitutional. *Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989). Furthermore, we have recently decided this issue adversely to appellant's position. *McFarland v. State,* 928 S.W.2d at 520. Point of error thirteen is overruled.

In point of error twelve, appellant argues that the statutory definition of mitigating evidence is unconstitutional under the Eighth Amendment because it limits the jury's consideration of mitigating factors to those reflecting his "moral blameworthiness."

Appellant claims the statutory language prohibits consideration of mitigating evidence which has no bearing on moral culpability, such as a history of kindness, religious devotion or special ability in some field.

Appellant has presented no such evidence in his case. Appellant presented evidence of past abuse, mental illness, intoxication, drug addiction and remorse, all of which reflect upon the issue of moral blameworthiness. Appellant also presented evidence that he benefitted from the structured environment of a boot camp. This evidence pertains to the future dangerousness issue. Because appellant has not presented any evidence with mitigating impact beyond the scope of the special issues, he has not been sentenced to death in violation of the Eighth Amendment. *Burks v. State*, 876 S.W.2d 877, 910 (Tex. Crim.App.1994); *Lane v. State* 822 S.W.2d 35, 38 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 920, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992). Point of error twelve is overruled.

■ In point of error eighteen, appellant asserts that Article 37.0711(3)(i), which prohibits informing a jury that failure to reach a unanimous verdict on any of the punishment issues will result in a life sentence, is unconstitutional. Specifically, appellant claims the statute violates the Eighth Amendment to the United States Constitution.

We have previously rejected this argument. In *Rousseau v. State*, 855 S.W.2d 666, 687 (Tex.Crim.App.1993), we held that preventing a jury from knowing the effect of its answers to the punishment issues does not subject a defendant to cruel and unusual punishment under the Eighth Amendment. Point of error eighteen is overruled.

### 6. *APPLICATION OF THE DEATH PENALTY*

■ In point of error eleven, appellant contends that the due process clause of the Fourteenth Amendment requires this Court to conduct a "proportionality review" with regard to the appellant's death sentence. Appellant asserts that this Court should consider whether his sentence is excessive or disproportionate compared to sentences imposed in similar capital cases. Appellant concedes that in *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the United States Supreme Court rejected this argument when it was raised under the Eighth Amendment. Appellant claims that the argument he sets forth requires a different holding under the Fourteenth Amendment. He relies on *Honda Motor Company, Ltd. v. Oberg*, 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994), in which the United States Supreme Court held that due process required a state to afford appellate review of the excessiveness of punitive damage verdicts.

*Honda* dealt with civil procedures, which by their nature operate under vastly different due process principles than do criminal cases in general and capital punishment cases in particular. *See, e.g., In re Winship* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (due process requirements in criminal proceedings) and *Gardner v. Florida*, 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977)(death is different). *Honda* does not stand for the proposition that due process requires comparative proportionality reviews of all civil judgments, much less, all criminal judgments; at most it stands for the proposition that due process requires some minimal safeguard ensuring that individual judgments are not excessive or disproportionate. *Honda* leaves open the form these safeguards might take. *Honda* held that a comparative proportionality review was required only because Oregon had no alternative means of safeguarding against excessive or disproportionate judgments. 512 U.S. 415, 431–433, 114 S.Ct. 2331, 2340–2341, 129 L.Ed.2d 336, 349–350.

The federal Constitution requires more than the minimal safeguard of a comparative proportionality review to ensure the fair imposition of the death penalty. Because death is qualitatively different from any other punishment, the federal Constitution requires the highest degree of reliability in the determination that it is the appropriate punishment. *E.g., Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–2992, 49 L.Ed.2d 944 (1976); *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976); *Furman v. Georgia*, 408 U.S. 238, 92

S.Ct. 2726, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas*). To ensure this reliability, the United States Constitution imposes requirements of proportionality of offense to punishment, of a narrowly defined class of death eligible defendants, and of an opportunity for each juror to consider and give effect to circumstances mitigating against the imposition of the death sentence. *See Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In short, the due process principles governing the imposition of a sentence of death are distinct and more onerous than those governing the imposition of a civil judgment. *Compare Tuilaepa* to *Honda*.

It is for good reason, therefore, that the United States Supreme Court has not held that due process requires a comparative proportionality review of the sentence of death, but instead has held that such a review would be "constitutionally superfluous." *Pulley*, 465 U.S. at 49, 104 S.Ct. at 879. *See also Jurek*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)(upholding our capital punishment scheme even without a comparative proportionality review). Point of error eleven is overruled.

 In points of error fifteen through seventeen, appellant claims the death penalty has been arbitrarily imposed in violation of the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Article I, Sec. 13 of the Texas Constitution. Appellant maintains that the existence over the years of "radically different" sentencing schemes has resulted in disparate sentencing of capital defendants. We have decided appellant's federal constitutional claims adversely to his position. *Lawton v. State*, 913 S.W.2d 542, 559–560 (Tex.Crim. App.1995).

Appellant also makes this challenge under Art. I, Sec. 13 of the Texas Constitution. Appellant reminds us that we *can* interpret the Texas Constitution more expansively than the federal Constitution and notes that the Texas Constitution proscribes cruel "or" unusual punishment. He refers us, without any elaboration, to a California case that attributes significance to a similar state constitutional proscription. But beyond claiming that it is "obvious," Appellant does not explain why he believes the Texas Constitution offers broader protection than the United States Constitution. Accordingly, we overrule points of error fifteen through seventeen.

The judgment is affirmed.

CLINTON, J., dissents.

MALONEY, J., concurs in the result.

BAIRD, Judge, dissenting.

*Two separate decisions are involved in any death sentence: the eligibility decision and the selection decision.* *Tuilaepa v. California*, 512 U.S. 967, 971, 114 S.Ct. 2630, 2634, 129 L.Ed.2d 750 (1994). To be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment. *Ibid.; and, Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). In Texas, only those convicted of an offense under Tex. Penal Code Ann. § 19.03 are eligible for capital punishment. The second decision, the selection decision, relates to the sentencer's determination whether a death eligible defendant should, in fact, receive the death penalty. The selection decision requires individualized sentencing and must be expansive enough to accommodate all relevant mitigating evidence so as to assure an assessment of the defendant's culpability. *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. at 2635. In Texas, the selection decision is determined by the jury's answers to the statutory punishment issues of Tex.Code Crim.Proc.Ann. art. 37.071.

The State must ensure that the process is neutral and principled so as to guard against bias or caprice. *Tuilaepa*, 512 U.S. at 973, 114 S.Ct. at 2635. *See also, Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (procedures must "minimize the risk of wholly arbitrary and capricious action"). To ensure this neutral and principled process, both decisions must be subject to appellate review. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (decided in conjunction with *Branch v. Texas*, 408 U.S. 238, 92 S.Ct.

2726, 33 L.Ed.2d 346 (1972)); *and, Parker v. Dugger,* 498 U.S. 308, 321, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991). This is so because meaningful appellate review of death sentences promotes reliability and consistency. *Clemons v. Mississippi,* 494 U.S. 738, 749, 110 S.Ct. 1441, 1448, 108 L.Ed.2d 725 (1990).

Thus it may be said that under the Eighth Amendment the process for arriving at a death sentence is akin to a three legged stool: the first leg is whether the defendant is eligible to receive capital punishment; the second leg is whether the jury finds him deserving of capital punishment; and the third leg is whether the eligibility and selection decisions are subject to appellate review. Should any leg of this stool fail, the entire scheme would be rendered unconstitutional.

## I.

Our capital sentencing scheme passed constitutional muster in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). As a part of its holding, the Supreme Court stated:

... By providing *prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sentences under law.* Because this system serves to assure that sentences of death will not be "wantonly" or "freakishly" imposed, it does not violate the Constitution.

*Id.,* 428 U.S. at 276, 96 S.Ct. at 2958.

Since *Jurek,* our capital sentencing scheme has been modified to include Tex.Code Crim. Proc.Ann. art. 37.071, § 2(e) which provides for submission of the following punishment issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Article 37.071, § 2(e) was enacted following *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which held the Texas capital sentencing scheme must provide the jury with a vehicle to express its "reasoned moral response" to mitigating evidence in reaching its selection decision. Because of its source, the § 2(e) punishment issue is commonly referred to as "the *Penry* issue." In conjunction with this issue, the Legislature enacted Tex.Code Crim.Proc. Ann. art. 44.251 which provides:

(a) The court of criminal appeals shall reform a sentence of death to a sentence of confinement in the institutional division of the Texas Department of Criminal Justice for life if the court finds that there is *insufficient evidence to support ... a negative answer to an issue submitted to a jury under Section 2(e),* Article 37.071, or Section 3(e), Article 37.0711, of this code.[1]

The question presented by appellant's tenth point of error is whether the Eighth Amendment and art. 44.251 impose upon this Court the duty to review the sufficiency of the evidence to support a negative answer to the *Penry* issue. For the following reasons, I believe we have such a duty and accordingly dissent to the majority's failure to reach the merits of appellant's tenth point of error.

## II.

As noted earlier, the Supreme Court has consistently held the decisions which give rise to a death sentence must be subject to appellate review. *See, e.g., Furman,* 408 U.S. at 310, 92 S.Ct. at 2762; *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958; *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). In Texas, the selection decision encompasses two principal punish-

---

1. All emphasis is supplied unless otherwise indicated.

ment issues.[2] First is the issue of "future dangerousness."[3] Second is the *Penry* issue which asks whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

In *Clemons, supra,* the Supreme Court spoke at length about the necessity of *meaningful* appellate review. The Court noted that the process of appellate courts reweighing of evidence was consistent with pursuit of the Eighth Amendment's twin objectives of measured, consistent application of the death penalty and fairness to the accused. *Id.,* 494 U.S. at 748, 110 S.Ct. at 1448 (citing *Eddings, supra; and, Lockett, supra*). The Court stated:

> We see no reason to believe that careful appellate weighing of aggravating against mitigating circumstances in cases such as this would not produce "measured consistent application" of the death penalty or in any way be unfair to the defendant. *It is a routine task of appellate courts* to decide whether the evidence supports a jury verdict and in capital cases in "weighing" States, *to consider whether the evidence is such that the sentencer could have arrived at the death sentence that was imposed.* And, as the opinion below indicates, a similar process of weighing aggravating and mitigating evidence is involved in an appellate court's proportionality review. Furthermore, this Court has repeatedly emphasized that meaningful appellate review

of death sentences promotes reliability and consistency. *See, e.g., Gregg v. Georgia, supra,* 428 U.S., at 204–206, 96 S.Ct., at 2939–2941 (joint opinion of Stewart, Powell, and Stevens, JJ.); *Proffitt v. Florida,* 428 U.S. 242, 253, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); *Dobbert v. Florida,* 432 U.S. 282, 295–296, 97 S.Ct. 2290, 2299–2300, 53 L.Ed.2d 344 (1977); *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). It is also important to note that state supreme courts in States authorizing the death penalty may well review many death sentences and that typical jurors, in contrast, will serve on only one such case during their lifetimes.

\* \* \* \* \* \*

> We accordingly see *nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence.*

*Clemons,* 494 U.S. at 748–750, 110 S.Ct. at 1448–1449..

The *Clemons* Court pointedly noted that failure to perform meaningful appellate review would result in an automatic rule of affirmance that would be invalid under *Lockett, supra,* and *Eddings, supra,* "for it would *not* give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating and aggravating circumstances." *Clemons,* 494 U.S. at 752,

---

**2.** The punishment issue provided by Tex.Code Crim.Proc.Ann. art. 37.071, § 2(b)(2) is not relevant to the instant case.

**3.** To determine whether the evidence is sufficient to support an affirmative answer to the future dangerousness punishment issue we consider the following non-exclusive list of factors:

> 1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;
> 2. the calculated nature of the defendant's acts;

> 3. the forethought and deliberateness exhibited by the crime's execution;
> 4. the existence of a prior criminal record, and the severity of the prior crimes;
> 5. the defendant's age and personal circumstances at the time of the offense;
> 6. whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;
> 7. psychiatric evidence; and,
> 8. character evidence.

*Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr.App. 1987); *and, Dinkins v. State,* 894 S.W.2d 330, 358 (Tex.Cr.App.1995).

110 S.Ct. at 1450.[4] *See also, Parker v. Dugger*, 498 U.S. 308, 321–322, 111 S.Ct. 731, 739–740, 112 L.Ed.2d 812 (1991) (Appellate review of mitigating evidence by the Florida Supreme Court was so deficient as to be arbitrary.).

Meaningful appellate review has been a requirement of the Eighth Amendment since the States began re-enacting capital sentencing schemes following *Furman.* For example, in upholding the constitutionality of the Georgia scheme the Supreme Court held:

> As an important additional safeguard against arbitrariness and caprice, the Georgia statutory scheme provides for automatic appeal of all death sentences to the State's Supreme Court. *That court is required by statute to review each sentence of death and determine whether it was imposed under the influence of passion or prejudice, whether the evidence supports the jury's finding of a statutory aggravating circumstance, and whether the sentence is disproportionate compared to those sentences imposed in similar cases.*

*Gregg v. Georgia,* 428 U.S. 153, 198, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976).

In *Proffitt v. Florida, supra,* the Supreme Court stated:

> The statute provides for automatic review by the Supreme Court of Florida of all cases in which a death sentence has been imposed.... Since, however, the trial judge must justify the imposition of a death sentence with written findings, *meaningful appellate review* of each such sentence is made possible and the Supreme Court of Florida, like its Georgia counterpart, considers its function to be to *[guarantee] that the [aggravating and mit-*

*igating] reasons present in one case will reach a similar result to that reached under similar circumstances in another case. ... If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great.*

*Proffitt,* 428 U.S. at 250–252, 96 S.Ct. at 2966. (Internal quotes omitted.)

In holding our post-*Furman* capital sentencing scheme constitutional, the Supreme Court noted that by providing for "prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sentences under law." *Id.,* 428 U.S. at 276, 96 S.Ct. at 2958.

These cases make it clear that meaningful appellate review is an absolute requirement of the Eighth Amendment. The question in the instant case then boils down to whether the jury's negative answer to the *Penry* issue is subject to *meaningful* appellate review.

### III.

A majority of this Court has consistently rejected requests to review the sufficiency of the evidence to support a negative answer to the *Penry* issue. However, the reasons for doing so have been less than consistent.[5]

#### A. *Colella*

Our first case which considered whether the *Penry* issue was subject to meaningful appellate review was *Colella v. State,* 915 S.W.2d 834, 845 (Tex.Cr.App.1995). In disposing of the point of error the Court held:

---

**4.** *Clemons* and *Parker* deal with the Mississippi and Florida capital sentencing schemes, respectively. Those schemes differ from that in Texas where the aggravating circumstance(s) is incorporated in the eligibility decision while in Mississippi and Florida the statutory aggravating circumstances are considered in the selection decision. Additionally, unlike Mississippi and Florida, Texas does not provide the jury with a non-exclusive list of mitigating circumstances. Mississippi and Florida are known as "weighing" states because the jurors and appellate courts are required to engage in the weighing process to determine whether the mitigating cir-

cumstances are out-weighed by the aggravating circumstances. This Court has engaged in a similar weighing process in reviewing the sufficiency of the evidence to support an affirmative answer to the "future dangerousness" punishment issue. *See,* n. 3, *supra; and, Barley v. State,* 906 S.W.2d 27, 38 (Tex.Cr.App.1995) (Baird, Overstreet and Maloney, JJ., concurring).

**5.** I joined the majority in *Lawton, supra* and *Broussard v. State,* 910 S.W.2d 952 (Tex.Cr.App. 1995). However, for the reasons stated *infra,* I now believe my doing so was erroneous.

Because the weighing of "mitigating evidence" is a subjective determination undertaken by each individual juror, we decline to review the evidence for sufficiency. We defer to the jury's conclusion that the evidence was not sufficient to warrant a sentence of life imprisonment.... *Id.*

In reaching this conclusion, the majority relied on *Banda v. State,* 890 S.W.2d 42, 54 (Tex.Cr.App.1994). However, that reliance was misplaced.

In *Banda,* the defendant complained of two veniremembers who stated they would not consider voluntary intoxication to be a mitigating factor. We held the veniremembers were not subject to a challenge for cause because the amount of weight that a juror might give to any "particular piece of mitigating evidence is left to the range of judgment and discretion exercised by each juror." *Id.,* 890 S.W.2d at 54 (quoting *Johnson v. State,* 773 S.W.2d 322, 331 (Tex.Cr.App.1989), *affirmed in part, Johnson v. Texas,* 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993)). While it is true that no evidence is mitigating as a matter of law, *Morrow v. State,* 910 S.W.2d 471, 472 (Tex.Cr.App.1995), it does not follow that because a veniremember is not subject to a challenge for cause, a punishment issue is not subject to meaningful appellate review.

Furthermore, *Colella* runs afoul of *Clemons* because it creates an automatic rule of affirmance that is invalid under *Lockett, supra,* and *Eddings, supra,* because *Colella* does *not* provide defendants with the individualized treatment that results from a reweighing of the mitigating and aggravating circumstances. *Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450.

### B. *Lawton*

Apparently, the Court recognized its reliance on *Banda* was misplaced in *Lawton v. State,* 913 S.W.2d 542, 556 (Tex.Cr.App.1995).

The *Lawton* Court, relying principally on *Pulley v. Harris* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), held appellate review of a negative answer to the *Penry* issue was "neither constitutionally required nor possible under our current law." [6] *Lawton,* 913 S.W.2d at 556. The Court's reliance on *Pulley* was misplaced because *Pulley* dealt with whether, before affirming a death sentence, an appellate court is required to conduct a proportionality review. Proportionality as defined by the Supreme Court is:

... an abstract evaluation of the appropriateness of a sentence for a particular crime. Looking to the gravity of the offense and the severity of the penalty, *to sentences imposed for other crimes, and to sentencing practices in other jurisdictions.* ...

*Pulley,* 465 U.S. at 42–43, 104 S.Ct. at 875. The Court held a proportionality review is not constitutionally required. However, it does not follow that because a proportionality review is not constitutionally required that meaningful appellate review of the *Penry* issue is not required. And, the *Lawton* Court did not explain why meaningful appellate review of the *Penry* issue was not "possible under our current law."

### C. *McFarland*

In *McFarland v. State,* 928 S.W.2d 482, 497–498 (Tex.Cr.App.1996), a plurality concocted a mix of *Colella* and *Lawton,* holding that even though art. 44.251 mandated appellate review, "[a] genuine 'sufficiency' review of the jury's negative answer to Article 37.071 § 2(e) is a logical absurdity." *Id.,* 928 S.W.2d at 498–499. The plurality, utilizing the *Banda* rationale, concluded: "[t]here is simply no way for an appellate court to review the jury's normative judgment that the evidence did or did not warrant a life sentence." *Id.,* 928 S.W.2d at 499.[7] *McFarland's* rationale then may be stated as fol-

---

**6.** The Court also cited *Hughes v. State,* 897 S.W.2d 285 (Tex.Cr.App.1994). However, this citation is inappropriate because *Hughes* dealt with the capital sentencing scheme *prior* to enactment of the *Penry* issue.

**7.** In a separate opinion, three Judges argued that art. 44.251 did not mandate a sufficiency review

of the *Penry* issue, *McFarland,* 928 S.W.2d at 524 (Keller, White and McCormick, JJ., concurring), "but merely prescribes the remedy in the event such a review is conducted ..." *Id.,* at 524. Implicitly then, those judges recognized the possibility of such a sufficiency review of the *Penry* issue.

lows: Even though the Legislature has mandated a sufficiency review of the *Penry* issue, we cannot follow that mandate because appellate review of a normative judgment is impossible. This rationale is flawed in two major respects.

### i.

First is the *McFarland* plurality's flawed interpretation of art. 44.251. As noted above, the *McFarland* plurality found that the plain language of art. 44.251 mandated appellate review of the *Penry* issue but nevertheless refused to "take the statute to mean what it plainly says." *Id.*, 928 S.W.2d at 498.

When interpreting a statute we seek to effectuate the intent or purpose of the Legislature. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). We focus our attention on the literal text of the statute in question and we presume the Legislature intended for *all* the statutory language to have meaning and effect. Therefore, we interpret the *entire* statute, not just an isolated section. *Dillehey v. State*, 815 S.W.2d 623, 626 (Tex.Cr. App.1991); *and*, Tex. Gov't Code Ann. § 311.021.

Article 44.251(a) provides:

> The court of criminal appeals shall reform a sentence of death to a sentence of confinement in the institutional division of the Texas Department of Criminal Justice for life if the court finds that there is insufficient evidence to support an affirmative answer to [the future dangerousness issue] *or* a negative answer to [the *Penry* issue].

The *McFarland* plurality's interpretation of art. 44.251 renders half of the statutory language without meaning or effect and, there-

fore, runs afoul of *Dillehey*, 815 S.W.2d at 626, and, Tex. Gov't Code Ann. § 311.021.

### ii.

Second, meaningful appellate review of a normative judgment is *not* impossible.[8] In *Clewis v. State*, 922 S.W.2d 126 (Tex.Cr.App. 1996), we discussed the concept of reviewing the factual sufficiency of the evidence. When conducting such a review the appellate court views all the evidence without the prism of in the light most favorable to the prosecution and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 134.[9] A factual sufficiency review is nothing more than the review of a normative judgment. Similarly, in context of the *Penry* issue we may reweigh the evidence to determine if there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Moreover, reviewing a normative judgment is routinely done in other jurisdictions. *Clemons*, 494 U.S. at 748–750, 110 S.Ct. at 1448–1449. In *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977), the Arkansas Supreme Court stated:

> There is a meaningful appellate review by this court of the appropriateness of the death penalty in a particular case, considering both the punishment and any errors on points raised in the trial court, including the sufficiency of the evidence to support *any part of the jury verdict*. This appellate review includes ... whether the evidence supports the jury's findings on the question whether mitigating circumstances outweigh aggravating ones ... [and] whether the sentence is excessive.

---

8. This *McFarland* plurality's use of the term "normative" originates in *Murphy v. State*, 777 S.W.2d 44 (Tex.Cr.App.1988), where we stated:

 > ... There, aside from certain exceptions, the "factfinder" does not determine the existence of discreet facts. Deciding what punishment to assess is a *normative process*, not intrinsically factbound. Because the material issue at punishment is so indistinct, relevancy of proffered evidence cannot be determined by deductive processes.

 *Murphy*, 777 S.W.2d at 62–63.

9. In *Clewis* we held:

 > ... [t]he appropriate balance between the jury's role as the judge of the facts and the reviewing court's duty to review criminal convictions is struck by *not* allowing the appellate court to find facts, or substitute its judgment for that of the jury; rather, when it determines that the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust*, it must reverse the verdict and remand for a new trial.

 *Clewis*, 922 S.W.2d at 135 (emphasis in original).

*Id.,* 548 S.W.2d at 120. *See also, State v. Breton,* 235 Conn. 206, 663 A.2d 1026, 1039 (1995), (Connecticut Supreme Court held the defendant's right to appellate review of the death sentence included appellate consideration of mitigating evidence.); *State v. Richardson,* 341 N.C. 658, 462 S.E.2d 492 (1995) (North Carolina Supreme Court considered whether evidence demonstrated a mitigating factor.); *Sheridan v. State,* 313 Ark. 23, 852 S.W.2d 772 (1993) (Arkansas Supreme Court reviews the jury's findings on mitigation.); *State v. Hernandez,* 204 Ill.App.3d 732, 149 Ill.Dec. 755, 562 N.E.2d 219 (2 Dist.1990); *Lowery v. State* 547 N.E.2d 1046 (Ind.1989) (Indiana Supreme Court reviewed the mitigating evidence to determine whether death sentence was erroneous.); *and, Fisher v. State,* 736 P.2d 1003 (Okl.Cr.1987) (The Oklahoma Court of Criminal Appeals determined that its appellate review must reweigh the balance of mitigating and aggravating circumstances.). Therefore, we should not hold that appellate review of the *Penry* issue is impossible when other jurisdictions undertake a similar review.

### IV.

Meaningful appellate review plays the crucial role of ensuring that the death penalty is not imposed arbitrarily or irrationally. *Parker,* 498 U.S. at 321, 111 S.Ct. at 739. This review must consider the "individual circumstances" of each defendant before death may be assessed.

It cannot be gainsaid that *meaningful appellate review* requires that the appellate court consider the defendant's actual record. "What is important ... is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 2743–2744, 77 L.Ed.2d 235 (1983); *See also Clemons, supra,* 494 U.S., at 749, 752, 110 S.Ct., at 1448–1449, 1450; *Barclay v. Florida,* 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) (plurality opinion). *Parker,* 498 U.S. at 321, 111 S.Ct. at 739–740 (emphasis in original). This individualized determination requires a review of the mitigating circumstances. The *Parker* Court held,

... the Florida Supreme Court affirmed Parker's death sentence *without considering the mitigating circumstances.* This affirmance was invalid because it deprived Parker of the *individualized treatment* to which he is entitled under our Constitution.

*Parker,* 498 U.S. at 322, 111 S.Ct. at 740. Thus this individualized treatment must take into consideration both aggravating and mitigating factors. *Ibid.*

This authority confirms that it is our Constitutional duty to review a jury's negative answer the *Penry* issue. Our Legislature recognized this and enacted article 44.251. Nevertheless, a majority of this Court refuses to perform the routine task of determining whether the evidence supports the jury's verdict. In so doing, we shirk our Constitutional responsibility and legislative mandate. Thus, the three legged stool upon which the constitutionality of our capital sentencing scheme rests, can not stand. Accordingly, I dissent to the failure to address the merits of appellant's tenth point of error.

·OVERSTREET, J., joins this opinion.

OVERSTREET, Judge, dissenting.

I dissent to the majority's disposition of appellant's points of error three through eight in which he complains of the trial court's restricting of voir dire in denying his requests to ask questions of veniremembers about 15–year parole ineligibility on a life sentence for capital murder.

The constitutional right to be represented by counsel includes the right of counsel to question the veniremembers of the jury panel in order to intelligently exercise statutory challenges. *Shipley v. State,* 790 S.W.2d 604, 607–08 (Tex.Cr.App.1990). Voir dire questioning is proper if it seeks to discover a veniremember's views on an issue applicable to the case. *Id.* at 608. Upon a guilty verdict for capital murder, the jury must answer a special issue regarding the defendant's future dangerousness. "In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisput-

ably relevant." *Simmons v. South Carolina,* 512 U.S. 154, 163, 114 S.Ct. 2187, 2194, 129 L.Ed.2d 133, 142 (1994). A prospective juror's views regarding such are certainly a matter of grave concern for both the prosecution and the defense in preparing to try a capital murder case; in fact such views are a matter of life or death.

I dissent to the majority's discussion and treatment of points of error three through eight.