IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-74,973






CARROLL JOE PARR, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM CAUSE NO. 2003-270-C IN THE 54
TH JUDICIAL DISTRICT COURT


McLENNAN COUNTY





 

 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Price, Womack, Keasler, Hervey, Holcomb, and Cochran, JJ. joined. Johnson, J.,
concurred.


O P I N I O N



 In May 2004, appellant was convicted of capital murder. Tex. Penal Code Ann.
§ 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced
appellant to death. Art. 37.071, § 2(g). (1) Direct appeal to this Court is automatic. Art.
37.071, § 2(h). Appellant raises thirteen points of error. We will affirm. 

SUFFICIENCY OF FUTURE DANGEROUSNESS

 In his eighth point of error, appellant claims that the evidence presented at trial
was legally insufficient to support the jury's finding that he would be a continuing threat
to society. See Art. 37.071, §2(b)(1). Appellant essentially argues that there was no
evidence except for "speculation and conjecture" that he would be a danger to free society
in forty years, when he would be eligible for parole, and that the focus should therefore be
on his danger to prison society, not free society. 

 In reviewing the sufficiency of the evidence at punishment, we examine the
evidence in the light most favorable to the verdict to determine whether any rational trier
of fact could have believed beyond a reasonable doubt that appellant would probably
commit criminal acts of violence that would constitute a continuing threat to society. 
Jackson v. Virginia, 443 U.S. 307 (1979); Alllridge v. State, 850 S.W.2d 471 (Tex. Crim.
App. 1991), cert. denied, 510 U.S. 831 (1993). 

 We have held that the circumstances of the offense alone may be sufficient to
support a jury's finding of future dangerousness. Martinez v. State, 924 S.W.2d 693
(Tex. Crim. App. 1996). Evidence showing "an escalating pattern of disrespect for the
law" can be used to support a finding of future dangerousness. King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997). Future dangerousness can also be supported by
evidence showing a lack of remorse and/or indicating an expressed willingness to engage
in future violent acts. Rachal v. State, 917 S.W.2d 799, 806 (Tex. Crim. App. 1996), cert.
denied 519 U.S. 1043 (1996). We have also consistently held that the jury considers both
free society and prison society in determining future dangerousness. Morris v. State, 940
S.W.2d 610, 613 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1278 (1997). The length
of a defendant's incarceration is not relevant to this issue. Id.

 Viewed in the light most favorable to the verdict, the evidence presented at trial
showed the following: On January 11, 2003, appellant arranged to purchase marijuana
from Joel Dominguez outside the B&G Convenience store in McLennan County. After
the drug deal was completed, appellant returned to the store with his friend Earl
Whiteside because he wanted to get his money back. Appellant and Whiteside saw
Dominguez standing outside the store with his friend Mario Chavez and made them walk
into a fenced area beside the store. Appellant struck Dominguez multiple times in the
head with his gun, demanding money. Dominguez complied and gave him all the money
he was carrying. Appellant told Whiteside, who wanted to leave, to "[s]moke 'em." 
Whiteside shot Chavez in his hand. Appellant shot Dominguez at close range in his head,
and Dominguez died from his injuries. 

 Appellant testified that he had planned the drug deal, but stated that he was not
involved in the robbery and that his friend Damion Montgomery did the shooting. 
However, both Chavez and Whiteside identified appellant as the person who shot
Dominguez. Further, four people-appellant's girlfriend Dawanna Harrison, appellant's
friend Ricky Garcia, appellant's cellmate Kenneth Reneau, and Montgomery-all testified
that appellant confessed to them that he was the shooter. 

 At punishment, the State presented evidence showing an escalating pattern of
disrespect for the law. See King, 953 S.W.2d at 271. Appellant was convicted of three
counts of delivery of cocaine on November 26, 1996, and was placed on probation. On
January 8, 1998, appellant violated the terms of his probation and was sentenced to two
years in state jail. After his release, he was convicted of evading arrest on December 29,
2000, and of possession of marijuana on December 13, 2001. There was evidence that
appellant had committed a number of violent unadjudicated offenses, including a shooting
at a residence in 2002 and an assault in 2003. Also, there was significant evidence
regarding his involvement in the unadjudicated murder of Ronnie Zarazua on December
9, 2001. 

 The State introduced evidence indicating that appellant was without regret or
remorse for the alleged killing of Zarazua or the murder of Dominguez, and that he
expressed a willingness to engage in future violent acts. Whiteside testified that
immediately after killing Zarazua, appellant returned to the site where he had dumped the
body to show it to him. Whiteside claimed that appellant told him that he had killed
Zarazua because he was supposed to testify against appellant's friend Milton Crosby. He
also said that appellant did not express any remorse for the killing, stating that he was
"keeping it real" for Crosby. Harrison also testified that appellant drove her to the area
where he had shot Zarazua and told her that he did it because Zarazua was going to testify
against one of his friends. Similarly, witnesses claimed that after shooting Dominguez,
appellant did not express remorse and was angry with Whiteside for not killing Chavez
because he did not want to leave a witness behind. 

 A rational jury could have concluded from all of this evidence that appellant would
continue to be a threat to society. Accordingly, we hold the evidence legally sufficient to
support the jury's affirmative answer to the future dangerousness issue. Jackson, 443
U.S. 307; Allridge, 850 S.W.2d 471. Appellant's eighth point of error is overruled. 

VOIR DIRE ISSUES

 In his fifth point of error, appellant claims that the trial court erred in granting the
State's challenge for cause to veniremember Roderick Dylan Garrett. The trial court
found that Garrett was unable to follow the law and fulfill his duty as a juror because of
his views on the death penalty. Wainwright v. Witt, 469 U.S. 412 (1985). Appellant
argues that the record does not support the trial court's finding because it shows that even
though Garrett was strongly opposed to the death penalty, he indicated that he could
follow the law in accordance with his oath. 

 Veniremembers who can set aside their beliefs against capital punishment and
honestly answer the special issues are not challengeable for cause. Id. at 424. 
Veniremembers are challengeable for cause if their views regarding the death penalty
would prevent or substantially impair the performance of their duties in accordance with
their instructions and oath. Id. 

 We review a trial court's ruling on a challenge for cause with considerable
deference because the trial court is in the best position to evaluate a veniremember's
demeanor and responses. Colburn v. State, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998). 
We will reverse a trial court's ruling on a challenge for cause only if a clear abuse of
discretion is evident. Id. When a veniremember's answers are vacillating, unclear, or
contradictory, we accord particular deference to the trial court's decision. Id. We will
not second guess the trial court when the veniremembers are persistently uncertain about
their ability to follow the law. Id. 

 When initially questioned by the prosecutor, Garrett explained that he could never
recommend a death sentence and would always answer the special issues so that a life
sentence would result. He explained that the death penalty was contrary to his religious
beliefs. However, when defense counsel questioned Garrett, he agreed that he could put
his religious beliefs aside and recommend the death penalty. Thereafter, the prosecutor
questioned Garrett about his contradictory responses in the following exchange:

 Q. And so if you were selected as a juror, the Judge would give
you an oath that says that you must follow the law. 


 A. Uh-huh.


 Q. Okay. And the law would require that you base your verdict on
the evidence. But your personal convictions, as I understand them, would
require you to say, I don't care what the evidence says, I'm not going to
issue a death penalty. 


 A. (Nodded head.)


 Q. You're shaking your head yes that you agree with that?


 A. Uh-huh. 


 Q. Okay. So you see where there is a conflict between the law and
your personal convictions which [are] most precious to you? Your
personal convictions or the law?


 A. On my own, I mean, because we have laws, but then, you know,
I believe in - - 


 Q. You've got to live with yourself, right?


 A. Yes, sir.


 Q. So your personal convictions are more important to you than the
law?


 A. We've got to have the law.


 Q. Well, which is it?


 A. I don't know.


 Q. Are you going to follow your belief - - 


 A. I believe in the law. I believe in the law.

 

 Q. - - that you can't give the death penalty?


 A. I believe in the law but I'm still not - - I couldn't do one for the
death penalty. That's just not - - I was brought up better than that.


 Even after this exchange, Garrett continued to vacillate in his answer. When
defense counsel questioned Garrett about the issue, he reiterated that he could answer the
special issues in a way that would result in the death penalty in the "worst of the worst"
cases. Subsequently, in response to the trial court's question: "Would you answer [the
special issue] truthfully even though you knew that that truthful answer would lead to the
Court sentencing someone to death?" Garrett answered: "Yes, I could do that." 
However, in response to the prosecutor's later question if he could answer the special
issues in a way that would result in the death penalty, Garrett answered that he could
never recommend the death penalty. Finally, when defense counsel asked if he could be
truthful in answering the special issues, Garrett answered: "Yes, I'll be truthful, to the
best of my ability I'll be truthful." 

 The State challenged Garrett for cause arguing that he had vacillated back and
forth so many times on this issue that he could not be a juror in this case. The trial judge
found that Garrett would not be able to follow the law and granted the challenge for
cause. 

 The trial judge's ruling is supported by the record. Because Garrett vacillated as to
his ability to follow the law, we defer to the decision of the trial judge, who was in a
position to actually see and hear him in the context of voir dire. The trial court did not
abuse its discretion in granting the State's challenge for cause. Appellant's fifth point of
error is overruled. 

 In his sixth and seventh points of errors, appellant claims that the trial court erred
in denying his challenges for cause to veniremembers Dipak Patel and John Timpani. 
Appellant argues that Patel and Timpani were challengeable for cause because they were
biased towards imposing the death penalty for anyone convicted of an intentional murder. 
Art. 35.16 (c)(2). 

 To show harm from a trial court's erroneous denial of a challenge for cause,
appellant must show that: (1) he asserted a clear and specific challenge for cause; (2) he
used a peremptory challenge on the complained-of veniremember; (3) all of his
peremptory challenges were exhausted; (4) his request for additional strikes was denied;
and (5) an objectionable juror sat on the jury. Green v. State, 934 S.W.2d 92, 105 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997). By statute, appellant was granted
fifteen peremptory strikes. Because he used only twelve, his peremptory challenges were
not exhausted. Thus, appellant has not shown harm. Appellant's sixth and seventh points
of error are overruled. 

EXTRANEOUS OFFENSE

 In his ninth point of error, appellant claims that the State's failure to prove an
extraneous offense beyond a reasonable doubt at punishment violated his Eighth and
Fourteenth Amendment rights. Appellant argues that the State failed to prove that he was
involved in a drive-by shooting which took place at the residence of his ex-girlfriend
LaShala Hardin in 2002. 

 Appellant fails to cite to any authority in support of his claim, and thus it is
inadequately briefed. Tex. R. App. P. 38.1. Further, appellant's claim is without merit. 
Article 37.071 does not require that the State prove all elements of an extraneous offense
beyond a reasonable doubt. See Art. 37.071; Adanandus v. State, 866 S.W.2d 210, 233
(Tex. Crim. App. 1993). We have held that the admissibility of extraneous offenses
under Article 37.071 does not violate the Eighth Amendment, because the State retains
the burden to prove the special issues beyond a reasonable doubt. Adanandus, 866
S.W.2d at 233. We have also held that the admissibility of extraneous offenses does not
violate the Fourteenth Amendment. Id. Appellant's ninth point of error is overruled. CONSTITUTIONALITY AND RELATED ISSUES 

 In his fourth point of error, appellant claims that the evidence was insufficient to
support the jury's finding on the mitigation special issue. This Court does not conduct a
sufficiency review of the mitigation special issue. Green v. State, 934 S.W.2d 92 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997). Appellant argues that our refusal
to review the sufficiency of the mitigation special issue is unconstitutional because it
denies him "meaningful appellate review." We have previously rejected this argument,
and we decline to reconsider it here. Id. Appellant's fourth point of error is overruled. 

 In his tenth point of error, appellant claims that the trial court's failure to instruct
the jury that a single holdout juror on any of the special issues would result in an
automatic life sentence was unconstitutional. We have repeatedly rejected this argument
and upheld the constitutionality of Article 37.071, section 2(a), which expressly forbids
this type of instruction. Draughon v. State, 831 S.W.2d 331 (Tex. Crim. App. 1992), cert.
denied, 509 U.S. 926 (1993); Williams v. State, 937 S.W.2d 479 (Tex. Crim. App. 1996). 
Appellant's tenth point of error is overruled. 

 Appellant raises several challenges to Texas' death-penalty statute in his remaining
points of error. In his first point of error, appellant claims that the death-penalty scheme
is unconstitutional because it implicitly puts the burden of proving the mitigation special
issue on the appellant. Appellant relies on Ring v. Arizona, 536 U.S. 584 (2002),
Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny to support his argument. 
In his second point of error, appellant cites Gregg v. Georgia, 428 U.S. 153, 189 (1976),
and Justice Blackmun's dissent in Callins v. Collins, 510 U.S. 1141 (1994), claiming that
the death-penalty statute is unconstitutional because it allows the jury too much discretion
in determining who should live and who should die, and lacks the minimal standards and
guidance necessary for the jury to avoid the arbitrary and capricious imposition of the
death penalty. In his third point of error, appellant claims that the death-penalty statute
violates the Supreme Court's decision in Penry v. Johnson "because the mitigation
special issue sends mixed signals to the jury thereby rendering any verdict reached in
response to that special issue unreliable." See Penry, 532 U.S. 782 (2001) (Penry II). In
his eleventh through thirteenth points of error, appellant claims that the failure to define
the terms "probability," "criminal acts of violence," and "society" in the future
dangerousness special issue is unconstitutional. 

 This Court has previously rejected all of these claims, and appellant does not
persuade us to revisit them. Williams v. State, 692 S.W.2d 671 (Tex. Crim. App. 1984);
Blue v. State, 125 S.W.3d 491 (Tex. Crim. App. 2003), cert. denied, 543 U.S. 853 (2004);
Escamilla v. State, 143 S.W.3d 814 (Tex. Crim. App. 2004), cert. denied, 125 S. Ct. 1697
(2005). Appellant's first through third and eleventh through thirteenth points of error are
overruled. 

 We affirm the judgment of the trial court. 


 Meyers, J.



Delivered: June 7, 2006

Do Not Publish
1. Unless otherwise indicated, all references to Articles refer to the Texas Code of
Criminal Procedure.