Willie Earl PONDEXTER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 71967.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 16, 1996.

Rehearing Denied Jan. 29, 1997.

Craig L. Henry, Texarkana, for appellant.

Laura Bayouth Popps, Asst. Atty. General, Matthew Paul, State's Atty, Austin, for State.

*OPINION*

OVERSTREET, Judge.

Appellant was indicted for the offense of capital murder pursuant to V.T.C.A. Penal Code § 19.03(a)(2), alleging murder in the course of committing and attempting to commit burglary of a habitation or robbery, alleged to have occurred on or about October 29, 1993, in Red River County. Prior to trial, venue was changed from the 6th Judicial District Court of Red River County to the 102nd Judicial District Court of Red River and Bowie Counties. In July of 1994, in a trial by jury, appellant was found guilty of capital murder. The jury answered the two statutory special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071 "yes" and "no" respectively. The trial court assessed punishment at death. Appeal to this court is automatic pursuant to article 37.071 § 2(h) V.A.C.C.P. In his appeal to this court, appellant raises twenty four points of error.

I. SUMMARY OF PERTINENT FACTS

On the night of October 28, 1993, Ricky Bell, James Bell, Deon Williams, and appellant met at an apartment and discussed robbing "an old lady." Following this discussion, the group walked to a corner store, and then to the decedent's house where they checked to see what kind of car she owned. The group then walked to a trailer park, and

then to a friend's house. Once there, they met with James Henderson. Appellant borrowed a car and all five drove to Annona to buy beer and go to a club. During the drive to and from Annona, the five talked about robbing the old lady, and about "crips and bloods and stuff." Specifically, they discussed which crip "had the heart" to do what they were planning to do to the old lady. On the way to the decedent's house, the group stopped at a store where they talked about which crip had the heart to knock out a man who happened to be getting gas. Although Williams and Henderson did get out of the car, no harm was actually done to the man. The group drove to the decedent's house, but parked the car a few blocks away. On their first attempt to enter the house, they were scared away by the sight of a patrolling police car. Four of the five ran back to the car, but James Bell ran in another direction and was not seen by the rest of the group again that night. Appellant, Henderson, Williams, and Ricky Bell went back to the decedent's house where appellant kicked in the front door. All four proceeded up the stairs and into the bedroom where the decedent was sitting on her bed. Once all four were in the bedroom, Williams took the seven dollars that was in the decedent's coin purse. Immediately thereafter, Henderson shot the decedent in the head and then handed the gun to appellant, who also shot the decedent in the head. They took the decedent's car, and drove to Dallas where they were arrested in the decedent's car.

## II. VOIR DIRE

In points of error six and seven appellant contends that the trial court violated the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by refusing to dismiss the petit jury array. Appellant contends that because there was undisputed statistical evidence to show that African–Americans made up twenty-two percent of Bowie County and less than ten percent of the veniremembers on the petit jury array were African–American, the venire did not represent a fair cross-section of the community as required by *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) and

*Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

Prior to trial, appellant filed a motion challenging the jury array, and a hearing was held. Appellant introduced evidence that minorities comprised only about ten percent of the panel, while African–Americans made up about twenty-two percent of the population of the county. The State countered first by reminding the court that under Article 35.07 of the Code of Criminal Procedure, a party may challenge the array only on the ground that the officer summoning the jury has willfully summoned jurors with a view to securing a conviction or acquittal. The State also argued that appellant had not met its burden under the second and third prongs of *Duren*.

■ As set out in *Duren*, in order to establish a prima facie violation of the requirement that there be a fair cross section of the community represented, appellant must show: 1) that the group alleged to be excluded is a "distinctive" group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren*, 439 U.S. at 364, 99 S.Ct. at 668.

■ In the instant case, appellant did meet the first prong of *Duren*, because the group allegedly excluded is distinctive; African–Americans. However, for the following reasons, appellant fails to carry his burden in meeting prong two, a showing of unfairness and unreasonableness, and prong three, a showing of systematic exclusion. The record shows that veniremembers were chosen randomly, by computer through voter registration, driver's license and identification card registration lists. There was no evidence introduced by appellant that showed that the difference between the percentage of African–Americans in the county and the percentage on the jury panel was in fact not fair and reasonable. While on its face, ten percent of the array versus twenty-two percent county-wide raises an inference of unfairness or unreasonableness, appellant failed to show

that the number of African–Americans who qualified for the selection process (registered voters, and those with driver's licenses or identification cards) were of the same or similar percentages as the population of the county.

Appellant also failed to show "systematic exclusion." Appellant brought forth information relating only to the venire in this case. In *May v. State*, 738 S.W.2d 261, 269 (Tex. Cr.App.1987), we stated that "disproportionate representation in a single panel does not demonstrate the systematic exclusion of distinctive groups in violation of appellant's rights under the Sixth Amendment." Additionally, as previously stated, the veniremembers were chosen through voter registration, driver's license and identification card registration by computer. Appellant simply offered no evidence that the selection process operated in any way to systematically exclude African–Americans from the panel.

Appellant also complains regarding a violation of the Equal Protection Clause of the Fourteenth Amendment. *Castaneda*, 430 U.S. at 492, 97 S.Ct at 1279, requires a showing of intentional discrimination. In the instant case, appellant fails to demonstrate in any manner that the underrepresentation of African–Americans was caused by intentional acts of the State. Appellant's sixth and seventh points of error are overruled.

■ In point of error eight, appellant contends that the trial court erred in failing to call a new jury array due to the prosecutor's purposeful use of peremptory challenges against veniremembers of the same race as appellant. The record establishes that appellant is African–American and that the State used peremptory challenges to remove all racial minorities from the panel. Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), once appellant has established a prima facie case, the burden shifts to the State to provide race-neutral reasons for striking the veniremembers in question. Appellant then has the burden of showing that the race-neutral reasons articulated by the State were in fact a pretext for discrimination. *Williams v. State*, 804 S.W.2d 95 (Tex.Cr.App.1991).

The record supports that appellant did establish a prima facie case by showing that all of the African–American, and in fact all racial minority, veniremembers were peremptorily struck by the State. The State offered the following reasons for exercising peremptory strikes on the minority veniremembers. The State explained that veniremember Anthony was struck because of a health problem that could affect her service as a juror. This veniremember stated that her problem would affect her ability to concentrate and be fair. The State explained that veniremember Brown was struck because she answered in her questionnaire that she was "pretty much totally against the death penalty," later vacillated in her answers concerning the death penalty, and stated she was a State employee, and that she did not want to serve on this jury. The State explained that veniremember Sanchez was struck because she held the belief that based on the fact that life means life, she would lean towards assessing a life sentence and therefore may have problems following the law, and that she believed that the criminal justice system is fair "sometimes." Finally, the State explains that veniremember Steptoe was struck because she held a Masters Degree in Psychology and has had professional contact with psychologists that may testify in this case.

■ In examining a *Batson* claim on appellate review, the reviewing court must determine whether the trial court's findings were clearly erroneous by examining the evidence in the light most favorable to the trial court's ruling. *Williams, supra.* Additionally, "absent some other evidence which rebuts the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate...." *Chambers v. State*, 866 S.W.2d 9, 25 (Tex.Cr. App.1993).

■ After reviewing the record under the above standards, appellant failed to meet his burden of rebutting the race-neutral reasons articulated by the State. In fact, there was no cross-examination of the prosecutor by appellant to invalidate any of the grounds enunciated by the State. In appellant's only attempt to meet his burden of persuasion, he

did assert that there were caucasian venire-members who also had health problems or who had concerns about the fact that life meant life, and were not struck by the State. In other words, appellant argued that the veniremembers who were struck were treated differently than others with the same problem. However, we have previously held, that "'disparate treatment' as such, cannot automatically be imputed in every situation where one of the State's reasons for striking a veniremember would technically apply to another veniremember whom the State found acceptable." *Adanandus v. State*, 866 S.W.2d 210, 224–25 (Tex.Cr.App.1993). Furthermore, we have held that when "the State has offered numerous race-neutral reasons for its challenge, we cannot say that the fact that there were other acceptable jurors possessing one or more of the objectionable attributes, is sufficient to establish disparate treatment." *Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Cr.App.1992). And in all of the State's explanations, the prosecutor asserted several race-neutral reasons for challenging each of the veniremembers. After examining the record, appellant's rebuttal was insufficient to establish that the State's reasons were a pretext, and we therefore find that the trial court's finding was not clearly erroneous. Appellant's eighth point of error is overruled.

In point of error nine, appellant contends that the trial court erred in failing to require the prosecution to deliver its notes taken during jury selection to him for use in cross-examination concerning the credibility of the prosecution's explanation for his peremptory challenges. As previously stated, once the State has supplied the court with its race-neutral explanations, the burden is on the defendant to show that these reasons are a pretext for racial discrimination. Appellant asserts that in order to meet this burden, he is entitled to cross-examine the prosecutor, as well as examine the notes taken by the State during voir dire. To substantiate this contention, appellant cites Rules 611, and 614(a) of the Texas Rules of Criminal Evidence. The State replies by noting that appellant failed to preserve this point of error by failing to object under Rules 611 or 614(a) at trial. Additionally, the State insists that

the prosecutor was never called as a witness during this hearing, and that the notes that were taken do not constitute a "statement" under Rule 614, and that the notes constituted privileged work product.

■ Rule 611 provides that when a "witness uses a writing to refresh his memory for the purpose of testifying either while testifying or before testifying, an adverse party is entitled to have the writing produced at the hearing to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." Tex.R.Crim.Evid. 611. The State asserts that the prosecutor was never called as a witness at this hearing, but we can not agree with this. Although the prosecutor was not actually sworn as a witness, he did give testimony to the court regarding the reasons for his peremptory strikes. However, appellant is only entitled to the notes if they were actually used by the prosecutor to refresh his memory. Since there is no evidence from the record to establish that the prosecutor did in fact use his notes to refresh his memory during or before his testimony, appellant's contention under Rule 611 must fail.

■ Rule 614(a) of the Texas Rules of Criminal Evidence provides that once a witness has testified on direct examination, the party who did not call that witness is entitled to examine and use "any statement of the witness" that relates to the subject matter of the witness' testimony. According to appellant, this means that appellant was entitled to the prosecutor's notes. Appellant failed to mention section (f) of the same rule. Rule 614(f) provides the definition of a "statement" for the purpose of this rule. A statement is defined as "a written statement made by the witness that is signed or otherwise adopted or approved by him." Tex.R.Crim. Evid. 614(f). Again, the record does not establish that the prosecutor's notes were signed or in any way adopted by him. And even though appellant argues that the trial court erred in not preserving the notes as part of the record, it was appellant's duty to request the court to include the notes as part of the record. Appellant did not make such

a request of the court. For all of the above reasons, the trial court did not err in failing to require the prosecution to turn over his notes to appellant, and appellant's ninth point of error is overruled.

In point of error ten, appellant contends that the trial court erred in overruling his motion to excuse veniremember Hall for cause based on her inability to disregard appellant's failure to testify during the trial. Appellant asserts that under Article 35.16(c)(2) of the Texas Code of Criminal Procedure, a challenge for cause should be sustained if the prospective juror "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely[.]" According to appellant, veniremember Hall testified that she was unable to set aside her personal beliefs that an accused should testify on his own behalf if he is indeed innocent of the accused offense.

■ The State however, is correct in asserting that appellant has failed to preserve this point of error for review by this Court. It is well established that "error is preserved only if the defendant exhausts his peremptory challenges, is denied a request for an additional peremptory challenge, identifies a member of the jury as objectionable and claims that he would have struck the juror with a peremptory challenge." *Nelson v. State*, 848 S.W.2d 126, 134 (Tex.Cr.App.1992); *Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Cr.App.1986). The record demonstrates that appellant only used thirteen of his fifteen peremptory challenges. Since appellant has failed to properly preserve error by exhausting his peremptory strikes, appellant's tenth point of error is overruled.

### III. GUILT/INNOCENCE

In points of error one, two, three and five, appellant contends that the trial court erred in admitting evidence of appellant's purported gang affiliations and activities. Appellant contends that by admitting this evidence, Rules 401, 403 and 404 of the Rules of Criminal Evidence were violated. Over defense objection, witness Williams testified that appellant and his accomplices made statements throughout the night about the crips gang. They talked about the fact that the crips and bloods fought one another, and discussed which crip had the heart to do what they were planning to do to the old lady. Additionally, there was testimony from this same witness that the group discussed which crip had the heart to knock out a man who was pumping gas at a gas station, and that two of the individuals involved performed a crip handshake after the murder. The State maintains that the testimony of witness Williams is both relevant under Rule 401 and as an exception to the general inadmissibility of extraneous acts under Rule 404(b), and therefore admissible.

Rule 404 explains that generally, evidence of other crimes, wrongs and bad acts is not admissible during the guilt/innocence stage of the trial, but § (b) of the rule does provide for some exceptions to this general rule.[1] We must also remember that under Rule 402, in order for any evidence to be admissible, it must be relevant. This includes Rule 404 evidence, and so in order to address appellant's 404 claim, we must also determine if the gang evidence is relevant under Rule 401.

The State argues that this evidence of appellant's gang affiliations and activities is relevant as same transaction contextual evidence which is an exception to the general rule prohibiting admissibility of extraneous offenses. The State claims that in this case it was essential for the jury to know of the conversations and acts regarding gangs in order for the jury to have a clear and complete picture of the way the murder took place. The State is correct in stating that we have held in the past that the list of exceptions under Rule 404(b) is "neither mutually

1. Rule 404(b) provides that:
   Evidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

exclusive nor collectively exhaustive," and that we have previously addressed the issue of same transaction contextual evidence, finding such to be admissible in certain cases. *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Cr.App.1990); *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Cr.App.1993); and *Moreno v. State,* 721 S.W.2d 295 (Tex.Cr.App. 1986). In fact, we held that "it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State,* 721 S.W.2d at 301. And furthermore, "where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others," this evidence is evidence of same transaction contextual evidence which is an exception to Rule 404(b) and is thus admissible. *Rogers v. State,* 853 S.W.2d at 33. However, in addressing this issue, it is important that we also take into consideration the fact that this Court has held that "same transaction contextual evidence," is admissible under Rule 404(b) "only to the extent that it is necessary to the jury's understanding of the offense." *England v. State,* 887 S.W.2d 902, 915 (Tex.Cr.App.1994). Such evidence is admissible only "when the offense would make little or no sense without also bringing in the same transaction evidence." *Id.*

■ After examining all of the facts surrounding the murder in the instant case, we find that the evidence in question had no tendency to make more probable the existence of any fact of consequence; the evidence was not relevant under Rule 401. This evidence was introduced simply as an attempt to connect appellant to gangs in order to show his bad character.[2] Since this evi-

dence is inadmissible under Rule 401, there is no need for a 403 or 404 analysis. Even if we were to assume that the evidence did pass the requirements of 401, the evidence is still not admissible as same transaction contextual evidence. Undoubtedly, the prosecution could have presented a clear and understandable case explaining how appellant planned to rob and murder the decedent, without interjecting the unnecessary information about the gangs. Had the State put on its case without mentioning this testimony of appellant's connection with gangs, the jury surely would have had no problems in following and understanding the sequence of events of the night of the murder. For example, testimony regarding the crip handshake which occurred after both the murder and robbery, clearly could not be necessary in placing the criminal events into context. Because all of the testimony that was offered about appellant and gangs was not necessary to the jury's understanding of the capital murder, this testimony was not same transaction contextual evidence, and thus not admissible as an exception under Rule 404(b). The trial court erred in admitting this evidence.

■ In finding that the trial court erred in admitting evidence of appellant's gang affiliations and activities, we must now conduct a harm analysis. Reversal is required, unless after examining the record, it is determined that the error made no contribution to the conviction, beyond a reasonable doubt. Tex.R.App.Pro. 81(b)(2); *Harris v. State,* 790 S.W.2d 568 (Tex.Cr.App.1989). Several factors must be considered by an appellate court before reaching a decision. Under *Harris,* the court should:

> examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the

---

2. In oral argument, the State argued that our holdings in *Beasley v. State,* 902 S.W.2d 452 (Tex.Cr.App.1995) and *Anderson v. State,* 901 S.W.2d 946 (Tex.Cr.App.1995) support its position that the evidence of appellant's purported gang activities was correctly admitted by the trial court. In *Beasley,* 902 S.W.2d at 456, we held that the evidence regarding a defendant's gang membership is relevant because it relates to his character and reputation. The critical difference

between that and the case at bar is that in *Beasley,* we found the gang evidence relevant and admissible during the punishment phase of the trial. In the instant case, the evidence connecting appellant with gangs was introduced at the guilt/innocence phase of the trial. We did not then, and do not now, hold that evidence of a defendant's gang affiliations is admissible as character evidence during the guilt/innocence phase of a trial.

court should consider how much weight a juror would probably place upon the error. In addition, the court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Id.* at 587.

■ Although there is no doubt that the State was the source of the error by introducing irrelevant evidence of character conformity, other facts must also be considered. First, there is no indication in the record that the State emphasized this gang related evidence. For example, the State made no mention of appellant's gang activities during either its opening or closing arguments. In deciding how much weight the jury may have given this testimony, we must examine the other evidence introduced at trial. There was only one witness, Williams, who testified to these gang activities. Furthermore, this was only a portion of Williams' testimony. He also testified that he actually saw appellant shoot the decedent. There was further testimony that appellant told another inmate that he had in fact shot the decedent. Finally, the jury heard testimony that placed appellant in possession of the weapon shortly before the murder, and that he was found and arrested in the decedent's car. Taking all of this information as a whole, the introduction of the evidence was harmless beyond a reasonable doubt. After reviewing all of the evidence, we find that the trial court's error in admitting evidence of appellant's gang affiliations made no contribution to the guilty verdict or punishment and was therefore harmless error in this case. Points of error one, two, three, and five are overruled.[3]

In point of error four, appellant contends that the trial court violated the First Amendment and Due Process Clause of the Fourteenth Amendment by admitting evidence of appellant's purported gang affiliations and activities. It is clear from the record that appellant made no objection at trial on this basis. Therefore, appellant has failed to pre-serve error for review. Tex.R.App.Pro. 52(a). Point of error four is overruled.

In point of error eleven, appellant contends that the trial court erred in overruling his hearsay objection and allowing into evidence a police report. Through the commander of the property auto pound section of the Dallas Police Department, the State proffered a copy of a computer generated invoice record of property, that itemized what was seized from co-actor Henderson and stored in the property room, as a business record. Appellant objected that the report was hearsay, and was inadmissible as a police report which contained matters observed by police officers or other law enforcement personnel. Appellant's objection was overruled by the trial court.

■ We know that the reason for Federal Rule of Evidence 803(8)(B), after which the Texas rule was modeled, was the presumed unreliability of observations that are made by officers at the scene of a crime. *United States v. Quezada,* 754 F.2d 1190 (5th Cir.1985); *Garcia v. State,* 868 S.W.2d 337 (Tex.Cr.App.1993). The reasons for the possible impairment of judgment are not implicated in situations where officers are conducting routine business matters, such as the recording of "objective observations." *Cole v. State,* 839 S.W.2d 798 (Tex.Cr.App.1990). Since this is a situation where the police officer was performing his ordinary, routine, duties of recording the property that was taken in and out of the property room, his observations, and notation should be presumed reliable. The case at bar is not unlike *United States v. Brown,* 9 F.3d 907, 911–12 (11th Cir.1993), where the court held that the evidence was not inadmissible under 803 because the property "[wa]s not the type of evidence contemplated by the exclusion of Rule 803(8)(B)." We agree with the State that this rationale should be applied in the case at bar. Since the trial court did not err in admitting the records from the property room, point of error eleven is overruled.

**3.** Appellant has also raised a supplemental point of error which likewise claims reversible error in allowing the State to introduce character evidence, i.e. of the above-discussed gang related conversations and handshakes, at guilt/innocence though he had not put his character in issue. In light of our conclusion that the admission of such evidence was harmless error pursuant to Rule 81(b)(2), *supra,* this supplemental point is likewise overruled.

In point of error twelve, appellant contends that the trial court erred in allowing the testimony from the police officer who arrested appellant because probable cause for such arrest was not put into issue by appellant during the trial. Appellant asserts that because he stipulated to the fact that probable cause existed for his arrest, the police officer's testimony was irrelevant. Officer Antribus testified to the fact that while on patrol on the night in question, he noticed a blue cadillac at a closed gas station. After running the cadillac's license plate, i.e. conducting a computerized registration check, officer Antribus followed the car to an apartment complex where he arrested appellant and an accomplice. The entirety of this testimony was certainly relevant in placing appellant in the decedent's car in Dallas on October 29, 1993, and corroborating the testimony of one of the accomplices (Williams). Appellant's twelfth point of error is overruled.

In point of error thirteen, appellant contends that the trial court erred in overruling his objection to the introduction of bullets seized during appellant's arrest.[4] Appellant claims that the bullets should not have been introduced into evidence because they were not properly authenticated. According to appellant, under Rule 901 of the Texas Rules of Criminal Evidence, before evidence is admissible, it must be proven that the evidence actually is what the proponent claims it is, and the police officer could only testify that these bullets appeared to be the same type as those that were retrieved during appellant's arrest, not that these were in fact the same bullets. Courts of appeals have held that evidence should be admitted if the trial court found that a reasonable juror could find that the evidence was authenticated. *Pena v. State,* 864 S.W.2d 147, 152 (Tex.App.—Waco 1993, no pet.); *Coleman v. State,* 833 S.W.2d 286, 289 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). At trial, Officer Mitchell testified that he seized a gun and two loaded magazines with 9 millimeter ammunition. He placed all of this evidence in his trunk, and took it to the property room,

where he put them in envelopes and affixed the completed property tags. Given these facts, there is no doubt that a reasonable jury could have found that the police officer's testimony showed that the evidence was authenticated. Appellant's thirteenth point of error is overruled.

## IV. PUNISHMENT

In point of error fourteen, appellant contends that the Texas capital sentencing statutes violate the Eighth and Fourteenth Amendments to the United States Constitution in that they fail to require that jurors be informed that a single holdout juror on any special issue would result in an automatic life sentence. Appellant argues that Article 37.071, § 2(a), which prohibits informing jurors of the effects of their failure to agree on the special issues, is unconstitutional. This court has addressed this issue several times, and has repeatedly held that there is no constitutional violation in failing to instruct jurors on the effects of their individual answers. *Emery v. State,* 881 S.W.2d 702, 711 (Tex.Cr.App.1994); *Draughon v. State,* 831 S.W.2d 331 (Tex.Cr.App.1992); *Nobles v. State,* 843 S.W.2d 503, 508–10 (Tex.Cr.App. 1992); *Davis v. State,* 782 S.W.2d 211, 221–22 (Tex.Cr.App.1989). Point of error fourteen is overruled.

In point of error fifteen, appellant contends that the death penalty as currently administered in Texas, is cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution; and in point of error sixteen, he contends that the Texas death penalty scheme has been arbitrarily imposed in violation of the Eighth and Fourteenth Amendments to the United States Constitution. To substantiate his contentions, appellant argues that the present Texas capital sentencing scheme is unconstitutional because it allows open-ended discretion that is prohibited by the Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Court in *Furman* prohibited open-ended discretion by demanding that sentencing statutes narrow the cate-

---

**4.** Though appellant's brief references the bullets as being seized during his arrest, the record

reflects that the bullets were actually seized during the arrest of co-actor Henderson.

gory of people who are eligible for capital punishment, and provide a means by which a determination as to a defendant's death worthiness is done on an individual basis. The Texas capital sentencing statute meets these requirements. There is a set category of people who are eligible for the death penalty. The Supreme Court upheld the constitutionality of the Texas capital sentencing scheme in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Points of error fifteen and sixteen are overruled.

In point of error seventeen, appellant contends that the statutory *Penry* special issue is facially unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution. It is his assertion that this special issue allows the type of open-ended discretion that was condemned by the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In actuality, the Court in *Furman* was concerned with the open-ended discretion of the statutes that failed to narrow the list of who was eligible for the death penalty. There is no prohibition against allowing juries to decide what evidence is mitigating, and how much weight they are going to give it. In fact, this Court and the Supreme Court have both held that this job is best left for the jury to decide. *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *Colella v. State*, 908 S.W.2d 437 (Tex.Cr.App.1995); *Morris v. State*, 940 S.W.2d 610, 614 (Tex.Cr. App.1996). Point of error seventeen is overruled.

In point of error eighteen, appellant contends that the admission of unadjudicated extraneous offenses during the sentencing phase violated the Eighth and Fourteenth Amendments to the United States Constitution. Under Article 37.071 of the Code of Criminal Procedure, evidence "as to any matter that the court deems relevant to sentence" may be presented during the punishment phase of a capital murder trial. This Court has previously upheld the constitutionality of allowing evidence of unadjudicated offenses during the punishment phase of a capital trial. *Adanandus v. State*, 866

S.W.2d at 233; *Lewis v. State*, 815 S.W.2d 560, 566 (Tex.Cr.App.1991); *Kinnamon v. State*, 791 S.W.2d 84, 93 (Tex.Cr.App.1990). Because appellant offers no support from the Constitution for overruling this line of cases, point of error eighteen is overruled.

In point of error nineteen, appellant contends that the evidence at trial was insufficient to support the jury's negative answer to the *Penry* special issue. Appellant maintains that this Court should conduct a sufficiency review of the evidence to determine if the jury's answers to the special issues were appropriate. In *Colella v. State*, 908 S.W.2d 437, 448 (Tex.Cr.App.1995), we refused to conduct such a review. We held that "because the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror, we decline to review the evidence for sufficiency." *Id.* at 448. Because of the subjective nature of this determination, we defer to the jury's findings. Point of error nineteen is overruled.

In points of error twenty and twenty-one appellant makes two related contentions about the Texas death penalty scheme. First, appellant claims that the trial court's instructions on the *Penry* special issue makes meaningful appellate review of the sufficiency of the evidence supporting that special issue impossible. Secondly, appellant argues that Texas Code of Criminal Procedure Article 44.251(a), when interpreted in conjunction with Article 37.071, § 2(e), is facially unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution. Appellant argues that because the *Penry* special issue does not list mitigating and aggravating factors, and does not require jurors to make specific findings in that regard, this Court is unable to identify which, if any, of the factors the jury considered, and consequently, meaningful appellate review, which is required under the Constitution, is impossible.

Appellant is wrong in asserting that meaningful appellate review is impossible by this Court in capital cases. It is simply not true that appellate review is impossible in capital cases simply because there is no definition of mitigation. As is required by the

Eighth and Fourteenth Amendments, Texas does provide appellate review as a safeguard to ensure that the death penalty is not arbitrarily or irrationally imposed. *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). The Texas scheme does adhere to the requirements of *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) in providing for a prompt, automatic review of a death penalty sentence. Furthermore, a sufficiency review is conducted by this court when examining the jury's answer to the future dangerousness special issue. As explained above however, because of the subjective nature in determining what constitutes mitigating evidence, this Court does not second-guess that portion of the jurors' decisions. *Chambers v. State,* 903 S.W.2d 21 (Tex.Cr.App.1995); *Colella v. State,* 908 S.W.2d 437 (Tex.Cr.App.1995). Points of error twenty and twenty-one are overruled.

■ In point of error twenty-two, appellant contends that the Due Process Clause of the Fourteenth Amendment requires this Court to engage in proportionality review in death penalty cases. The Supreme court addressed the issue of whether or not proportionality review in capital cases in required, and has stated that "we certainly did not hold that comparative review was constitutionally required," and there "is no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed...." *Pulley v. Harris,* 465 U.S. 37, 50–51, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984). Although the Supreme Court recognized that the most logical basis for this claim was under the Eighth Amendment, it is clear from a thorough reading of *Pulley,* that it found no constitutional proportionality review requirement. Furthermore, in *Hughes v. State,* 897 S.W.2d 285, 294 (Tex.Cr.App.1994), this Court interpreted the holding of *Pulley* as requiring no proportionality review in capital cases under both the Eighth and the Fourteenth Amendments. Point of error twenty-two is overruled.

In point of error twenty-three, appellant contends that the trial court's punishment charge, which instructed the jury to answer the first special issue affirmatively if jurors believed that appellant's mitigating evidence militated in favor of a life sentence, was fundamental error. Appellant failed to object at trial to the trial court's instructions on this basis, even though there was an opportunity for him to do so. For this reason, appellant waives review of this error. Appellant also claims that this error was fundamental, and therefore this contention may be raised for the first time on appeal. There is no basis for appellant's claim that this is fundamental error. Point of error twenty-three is overruled.

■ In point of error twenty-four, appellant contends that the trial court committed reversible error by refusing to instruct jurors that they should not consider mitigating evidence in aggravation of punishment. No error was committed in failing to give the requested instruction to the jury since such an instruction would have been a misstatement of the law. As we held in *Curry v. State,* 910 S.W.2d 490 (Tex.Cr.App.1995), and *Morrow v. State,* 910 S.W.2d 471 (Tex.Cr. App.1995), *Penry* only requires that juries be provided with a vehicle in which they can consider mitigating evidence. It is for the jury to determine what evidence, if any, constitutes mitigating evidence, and how much weight it should be given. *Colella v. State,* 908 S.W.2d 437 (Tex.Cr.App.1995). Point of error twenty-four is overruled.

Having reviewed all of appellant's points of error, we affirm the trial court's judgment and sentence.

MCCORMICK, P.J., and CLINTON, J., concur in the result.

BAIRD, J., concurs: I concur in the resolution of point of error eleven, believing the error was cured when the same evidence was admitted through other sources. I disagree with the treatment of points of error nineteen, twenty and twenty-one for the reasons stated in *Morris v. State,* 940 S.W.2d 610, 616 (Baird, J., dissenting). I join the remainder of the majority opinion.

MANSFIELD, Judge, concurring.

I join the opinion of the Court. However, for the reasons expressed herein, I write

separately with respect to points of error numbers one, two, three and four. These points of error concern the relevancy of evidence of purported gang membership of the appellant during the guilt-innocence phase of appellant's trial.

Evidence presented at trial established appellant and three other individuals met at an apartment to plan a robbery of the victim's house. They subsequently walked to the residence of a fifth individual and then drove to a convenience store to get some beer. During the drive, the five talked about the planned robbery and about "Crips and Bloods and stuff." On the way to the victim's house they stopped at a store, where they saw a man pumping gas. They talked about which Crip "had the heart" to knock out and rob the man. However, no attempt was made to assault or rob the man, though there was testimony that two of the five did get out of the car and walked toward the man. Other testimony at trial showed the five made statements about gangs before and after commission of the offense and performed "Crip handshakes." Deon Williams testified he had no personal knowledge about whether appellant was a member of the Crips or any other gang. Williams earlier had testified he had "heard on the street" appellant was in a gang.

Appellant, prior to trial, filed a motion in limine to exclude evidence and testimony about gang membership. Appellant's objections to Williams' testimony concerning appellant's alleged gang activities were overruled; the trial court granted appellant a running objection.

"Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Crim.Evid. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex.R.Crim.Evid. 403. Character evidence is generally admissible at the punishment phase of trial pursuant to Texas Rule of Criminal Evidence 404(c); use of character evidence at the guilt-innocence phase of trial is restricted by the provisions of Texas Rule of Criminal Evidence 404(a).

In *Anderson v. State*, 901 S.W.2d 946 (Tex.Crim.App.1995), and in *Beasley v. State*, 902 S.W.2d 452 (Tex.Crim.App.1995), this Court found evidence of gang membership to be admissible at the punishment phase of the defendant's trial as relevant character evidence. We acknowledged that testimony as to gang membership and as to the criminal activities of the gang may have been prejudicial. However, the testimony was not unfairly prejudicial because the jury was only required to determine the defendant's character based on his gang membership and they were not required to determine whether the defendant was guilty of the misconduct or bad acts of the gang. *Anderson, supra*, at 950.[1] Therefore, we held evidence of gang membership was admissible as character evidence at punishment under Texas Rule of Criminal Evidence 404(c) and Texas Code of Criminal Procedure Article 37.07, Section 3(a). *Anderson, supra*, at 952 (Mansfield, J., concurring). We did not address, in *Anderson* and *Beasley*, whether evidence of gang membership of an accused is admissible at the guilt-innocence phase of his trial.

In the present case, however, the only testimony that appellant belonged to a gang was the testimony of Williams, who admitted he had no first-hand knowledge appellant was a gang member. There was some testimony appellant and his accomplices talked about gangs and even performed a gang handshake, but none of this testimony was

---

1. In *Anderson*, Ferguson, a Fort Worth police officer, testified as to his personal knowledge of defendant's membership in a gang called the Canine Posse. Officer Ferguson testified he observed the defendant on several occasions wearing a Canine Posse tee shirt. He further testified he saw the defendant "hanging out" with other Canine Posse members. Finally, Officer Ferguson testified as to his personal knowledge that the Canine Posse was involved in the distribution of illegal drugs in and around the Caville Apartments.

evidence of actual gang membership.[2] Indeed, this testimony is best characterized as "bragging," rather than as probative or reliable. Even assuming, arguendo, that evidence of gang membership is admissible as relevant under Rule 401 at the guilt-innocence phase of trial, it is my opinion that this evidence was erroneously admitted and should have been excluded under Rule 403, given its lack of reliability and given its highly prejudicial nature.

However, applying the harmless error analysis set forth in *Bishop v. State,* 869 S.W.2d 342, 346–347 (Tex.Crim.App.1993), it is my opinion the error in admitting the gang-related testimony in the present case was harmless beyond a reasonable doubt. Tex. Rule App. Proc. 81(b)(2). First, we note appellant was observed shooting the victim in the head by Williams, who so testified at trial.[3] Second, Michael Kendricks, a fellow inmate of appellant, testified appellant told him he shot the victim. Third, appellant was arrested while driving the victim's car. Fourth, several witnesses linked appellant to the weapon used to shoot the victim. This evidence, taken together, is overwhelming evidence of appellant's guilt.

While overwhelming evidence of guilt is a factor to be taken into account, we have held that if the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, then the conviction is tainted and reversal is required, no matter how overwhelming the evidence of guilt might have been. *Harris v. State,* 790 S.W.2d 568, 588 (Tex.Crim.App.1989). In my opinion, the gang-related testimony did not disrupt the jury's orderly evaluation of the evidence. The testimony itself consisted solely of "gang-talk" among appellant and his "homies," plus Williams' testimony as to his second-hand knowledge of appellant's gang membership. Additionally, the State did not introduce any evidence as to violent or illegal activities engaged in by gangs such as the Crips, which would have made the testimony of appellant's alleged gang membership more prejudicial. Finally, the testimony was introduced primarily to place the instant offense in context, i.e., the possible motivation behind its commission. Perhaps most significantly, the State did not mention gangs or appellant's alleged gang membership during its closing argument; given this record it is apparent the State was not attempting to taint the trial process by emphasizing the gang related testimony at one of the most critical stages of the trial—closing argument.[4]

Because, in my opinion, the erroneous admission of gang-related testimony did not contribute to appellant's conviction or punishment as it did not impermissibly taint appellant's trial for the reasons given above, I conclude beyond a reasonable doubt the error was harmless.

With these comments, I join the opinion of the Court.

KELLER, Judge, concurring.

My first difficulty with the majority opinion is with regard to its treatment of point of error nine. I believe that the prosecutor's voir dire notes are work product, and the State should not be required to turn voir dire notes over to the defense during a *Batson* hearing.

I also disagree with the majority's analysis of the points of error dealing with evidence of gang membership. The majority says the evidence of gang membership in this case was not relevant. Gang membership may or may not be relevant during guilt-innocence. As is true with any other evidence, gang membership is relevant if it has any tendency

---

**2.** Compare to *Anderson,* where a police officer witness testified as to his first-hand knowledge that the defendant belonged to a gang.

**3.** Appellant contends that he shot the victim in the jaw and that this was not a fatal wound. (Another individual shot the victim in the brain.) The medical examiner testified the wound to the victim's jaw could have been mortal.

**4.** In *Harris, supra,* at 587, this Court held, in conducting a harmless error analysis, the reviewing court must determine whether declaring a particular error harmless would encourage the State to repeat it with impunity. I do not see, logically, how such a determination can be made and urge that we reexamine this aspect of *Harris.*

to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. Tex. R.Crim. Evid. 401. This determination must be made on a case-by-case basis.[1]

In the instant case, the evidence of the discussions of which crip "had the heart" to kill the victim and to knock out the man at the gas station, and of the crip handshake after the murder, was relevant to show a possible motive for the murder of Martha Lennox. Certainly the evidence tends to make sense of evidence that is otherwise unaccountable: the co-defendant, after shooting the victim in the head, handed appellant the gun and appellant shot the victim after she had already been shot.

According to the majority, the State could have presented a clear and understandable case without the evidence—but surely that is not the test for relevance. Under the facts of this case, gang membership was not merely an incidental aspect of appellant's life; it was part of the reason for the murder and it was part of the explanation for why the murder occurred as it did. Had the State been required to excise the gang-membership aspect of the murder, its case against appellant would have been less coherent and less believable.

Events do not occur in a vacuum. The jury has a right to have an offense placed in its proper setting so that all evidence may be realistically evaluated. *Burks v. State*, 876 S.W.2d 877, 900 (Tex.Crim.App.1994), citing *Mann v. State*, 718 S.W.2d 741, 743 (Tex. Crim.App.1986), cert. denied 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). In a prosecution for capital murder where consideration of the behavior of the defendant is critical, the entire context of the offense showing his actions is vital. *Id.* In the instant case the testimony that indicated that Lennox's murder was part of a gang undertaking allowed the jury to view the offense in the proper setting, the way it actually oc-

curred. The trial court did not err in admitting this evidence.

I concur in the opinion of the Court.

WHITE, J., joins.

---

1. In *Anderson v. State*, 901 S.W.2d 946 (Tex. Crim.App.1995) and *Beasley v. State*, 902 S.W.2d 452 (Tex.Crim.App.1995) we considered whether evidence of gang membership is admissible at punishment. The issue in this case concerns the admission of such evidence at guilt/innocence.