Affirmed and Majority and Concurring Opinions filed July 17, 2003









Affirmed and Majority and Concurring Opinions filed
July 17, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS.
14-01-01173-CR and

  
14-01-01174-CR

____________

 

RANDY DALE TIBBS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause Nos.  872,137 and 872,015

 



 

C
O N C U R R I N G   
O P I N I O N

I
concur in the court=s judgment, but I disagree with the majority=s
analysis to the extent it holds the trial court did not err when it admitted
evidence of Brown=s skinhead affiliations and racist activities.  This error, however, was harmless.








THE
STATE=S EVIDENCE WAS

INADMISSIBLE
CHARACTER EVIDENCE

 

Evidence pertaining to a third person who is not the victim,
accused, or a witness, is character evidence subject to Evidence Rule 404
analysis.  See Castaldo v.
State, 78 S.W.3d 345, 348B51 (Tex.
Crim. App.
2002) (finding rule limiting evidence of other crimes, wrongs, or acts applies
not only to accused, but also to third persons).  Evidence that a person is a skinhead or
affiliated with a gang is also evidence subject to Evidence Rule 404
analysis.  See Pondexter
v. State, 942 S.W.2d 577, 583B84 (Tex.
Crim. App.
1996) (gang evidence not relevant under Evidence Rule 401 may not be introduced
during guilt/innocence stage if proffered simply to show bad character).

Evidence
of Brown=s
tattoos and gang-affiliation is properly characterized as character
evidence.  As such, it is inadmissible
during the guilt/innocence phase of a defendant=s trial unless it is relevant for a Anon-character@
purpose that tends to show commission of the crime. Vasquez v. State, 67
S.W.3d 227, 239B40 (Tex.
Crim. App.
2002); see also Tex. R. Evid. 404(a) and (b); Pondexter,
942 S.W.2d at 584 n.2 (gang evidence introduced during guilt/innocence phase Ato
show . . . bad character@ is improper).

THE
STATE=S EVIDENCE WAS NOT RELEVANT

FOR
A NON-CHARACTER PURPOSE

 

Appellant
testified he is not a skinhead or member of a gang.  Evidence that his friend is a skinhead
is irrelevant, unfairly prejudicial, and convicts appellant through guilt by
association.








The
majority argues that the racial slurs coming from Brown=s
car immediately preceding the fight and the racially-charged remarks made by
Brown during the fight show a causal connection between the assault and Brown=s
neo-Nazi tattoos and racially-motivated behavior.  Photographs of Brown=s
tattoosCincluding
a swastika and other Nazi symbolsCare relevant, argues the majority, to show intent and motive
and to rebut appellant=s self-defense argument. 
See Bradshaw v. State, 65 S.W.3d 232, 238 (Tex. App.CWaco
2001, no pet.).  

I
disagree.  The need to show motive and
intent, the need to rebut a self-defense argument, and the need to show any
number of other potential bases for admission of gang-affiliation evidence
simply are not extant in this case.

(1)     The evidence was not necessary to prove
intent.

Aggravated
assault and murder both require culpable mental states of intentionally or
knowingly causing bodily injury or death, and appellant=s
indictments so provided.  See Tex. Pen. Code '' 22.02 and 19.02.  At trial, therefore, the State was required
to prove appellant intentionally or knowingly caused bodily injury and death
when he assaulted Ponce and Simmons.

Intent
can be inferred from an accused=s acts, words, or conduct. 
See Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim.
App. 1982); Beltran v. State, 593
S.W.2d 688, 689 (Tex. Crim. App. 1980); In
re. B.P.H., 83 S.W.3d 400, 408 (Tex. App.CFort Worth 2002, no pet.).  A
specific intent to kill may be inferred from the use of a deadly weapon unless,
in the manner of its use, it is reasonably apparent that death or serious
bodily injury could not result.  Staley v. State, 887 S.W.2d 885, 889 (Tex. Crim. App. 1994).
 Where the State=s
direct evidence clearly shows the intent element of the crime and that evidence
is uncontradicted by the defendant or not undermined
by cross-examination of the State=s witnesses, the offer of other crimes is unjustified due to
the lack of relevancy.  Rankin v. State, 974 S.W.2d 707, 719 (Tex. Crim. App. 1996) (op.
on reh=g).








A
knife is considered a deadly weapon if used in a manner capable of causing
death or serious injury.  Tex. Pen. Code Ann.
1.07(a)(17)(B)(Vernon 1994) (defining deadly weapon as
Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury@); McCain v. State, 22 S.W.3d 497, 502B3
(Tex. Crim. App. 2000)
(finding knife to be a deadly weapon); Thomas v. State, 821 S.W.2d 616,
619B20
(Tex. Crim. App. 1991)
(same).  If a deadly weapon is used in a
deadly manner, the inference is almost conclusive that defendant intended to
kill.  Adanandus v. State,
866 S.W.2d 210, 215 (Tex. Crim. App. 1993).  See also Gutierrez v. State, 85 S.W.3d
446, 450 (Tex. App.CAustin 2002, no pet.
h.) (finding jury could infer culpable intent to kill
where numerous witnesses observedCand appellant admittedCappellant stabbed and killed victim in self-defense).

Here,
appellant produced a knife with a 9-inch blade, blindly swung the knife at his
attackers, killing one person and injuring another.  A reasonable trier
of fact could infer from these acts that appellant had the intent to cause
death or bodily harm.  See Tex. Pen. Code '
1.07(a)(17)(B) (Vernon 1994).  See also B.P.H., 83 S.W.3d at 408
(finding intent to kill could be inferred where defendant pulled out knife and
threatened student with death if student acted as witness against
defendant).  

Consequently,
character evidence about Brown=s racist activities was not necessary for the State to prove
the element of intent for both offenses. 
See Rankin, 974 S.W.2d at 719.

(2)     The evidence was not necessary to rebut
self-defense, because appellant was not entitled to such an instruction.

 

Appellant
testified his attacks on Ponce and Simmons were made in self-defense and a
self-defense instruction was submitted to the jury.  The evidence, however, does not support such
a charge; thus, rebuttal evidence was unnecessary.








A
person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself against the other=s use or attempted use of unlawful force.  See Tex.
Pen. Code Ann. ' 9.31(a) (Vernon Supp. 2003).  Deadly force, however, is only justified when
a reasonable person in the actor=s situation would not have retreated.  Id. at ' 9.32(a)(2).  See also Juarez v. State, 886 S.W.2d  511, 513B14
(Tex. App.CHouston [1st Dist.] 1994, pet. ref=d); Broussard v. State, 809 S.W. 2d 556, 558B59
(Tex. App.CDallas
1991, pet. ref=d).[1]

Before
an instruction on self-defense is warranted, the defendant has the burden of
coming forward with evidence that sufficiently raises the issue.  Clifton v. State, 21 S.W.3d 906, 907 (Tex. App.CFort Worth 2000, pet. ref=d).  See
also Riddle v. State, 888 S.W.2d 1, 6 (Tex.
Crim. App. 1994).  If he meets this burden, the right to the
instruction enures to the defendant regardless of
whether the evidence is weak or strong, unimpeached
or contradicted, and regardless of what the trial court may or may not think
about the credibility of his defense.  Hamel
v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); Torres v. State, 7 S.W.3d 712, 714 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).

Here,
evidence suggests there were three ways appellant could have Aretreated@:
he could have retreated within the car itself, by locking its doors and/or
driving away; he could have retreated to the convenience store and called
9-1-1; or he could have retreated on foot by grabbing Mary and running
away.  No evidence was produced to
demonstrate appellant utilized any of these escape routes.

Rather,
three State witnesses and one defense witness testified appellant voluntarily
got out of Brown=s vehicle.  Indeed, the
State=s
witnesses all testified appellant entered the fight willingly; one even
testified appellant could have re-entered the vehicle, locked the doors, or
entered the store and called police.  No
one testified to hearing appellant say anything like Astop
or I=ll cut you.@








Although
appellant testified he did not voluntarily get out of Brown=s
vehicle, he does admit he planned to.  His plan, he claims, was to attempt to scare
Brown=s
assailants with the knife; however, before he could execute the plan, he was
pulled from Brown=s van and forced to defend himself.  He admits thatCdespite Athinking about it@Che
did not try to lock the car doors during the fight, did not attempt to roll up
the windows, and did not try to get into the driver=s
seat and drive off.  The only rational
inference to draw from such evidence is that appellant did not behave as a
reasonable person in appellant=s position would haveCnamely, he did not retreat; rather he made plans to escalate
the confrontation.  See
Broussard, 809 S.W.2d at 560 (finding where Athere
[was] nothing in evidence to show that a reasonable person in [appellant=s] circumstances would not have
retreated,@
appellant was not entitled to self-defense instruction).

Because
the record fails to support the Ainability to retreat@ element of self-defense, I believe the evidence at trial was
insufficient to raise the issue of self-defense with deadly force.  See Tex.
Pen. Code Ann. '  9.32(a)(2) (Vernon
Supp. 2003); Riddle, 888 S.W.2d at 6B7 (appellant not entitled to self-defense instruction where
appellant did not testify he could not retreat or that he attempted to retreat
but was prevented from doing so); Flores v. State, 49 S.W.3d 29, 34 (Tex. App.CSan Antonio 2001, pet. ref=d) (appellant not entitled to self-defense instruction where he
shot victim nine times, took another gun, and shot victim two more times
because a rational juror could not believe Aa reasonable person in [appellant=s] situation would not have retreated@).  








Because
appellant was not entitled to an instruction on self-defense, Brown=s
character evidence had little, if any, probative value and A[g]iven the danger of unfair prejudice,@
the trial court should have excluded it. 
See Mozon v. State,
991 S.W.2d 841, 848 (Tex. Crim. App. 1999) (Keller, J., dissenting).[2]  Even though the rule articulated in Mozon is in the dissent, the mere location of the
rule does not defeat its accuracy.  The
essential element justifying deadly force in self-defense is Aa
reasonable person in the actor=s position would not have retreated.@  Tex. Pen. Code Ann. ' 9.32(a)(2) (Vernon Supp. 2003).  Because appellant failed to prove that a
reasonable person would not have retreated, his self-defense instruction was
improper, and concomitantly, evidence rebutting that instruction was improperly
admitted.

Moreover,
even if appellant had been entitled to the trial court=s
self-defense instruction, the State=s character evidence regarding Brown was unnecessary because,
as determined above, a reasonable trier of fact could
clearly infer from appellant=s acts with a deadly weapon that he had the intent to kill or
cause bodily harm.  See B.P.H., 83 S.W.3d at 408.

(3)     The
evidence was not necessary to satisfy a hate crime enhancement.

 

Under
Texas law, a person found guilty of certain hate crimes can be subject to
enhanced punishment.  Tex. Pen. Code ' 12.47(a) (Vernon Supp. 2002) (stating that if an affirmative
finding under 42.014 of the Texas Code of Criminal Procedure is made in the
trial of an offense other than a first degree felony or Class A misdemeanor,
punishment increases to the next highest category of punishment).  See also Martinez v. State, 980 S.W.2d
662, 666 (Tex. App.CSan Antonio 1998, pet. ref=d); Sterry
v. State, 959 S.W.2d 249, 255 (Tex. App.CDallas 1997, no pet.).  

In such cases, the State must prove the person intentionally
selected his victim because of his race or some other feature. Tex. Crim. Proc. Code
Ann. ' 42.014(a) (Vernon Supp. 2002)
(stating that if the trier of fact in the
guilt-innocence phase of a trial determines defendant intentionally selected
his victim because of bias or racial prejudice, that fact shall be used in
judgment of the case).








Here, no hate crime enhancement was sought against
appellant.  The State=s indictment did not include an
enhancement and the State did not submit the hate crime issue to the jury.  Additionally, no evidence was produced to
indicate appellant was a racist or skinhead.  The homicide detective who testified on
behalf of the State said he found no evidence or documentation that
appellant was a racist or skinhead, and when he provided the Federal Bureau of
Investigation (FBI) with information about appellant=s offenses, the FBI, too, found no
hate crime.

Because the State did not seek a hate crime enhancementCand because the State proffered no
proof appellant himself was a racistCthe State did not need evidence
tending to suggest appellant=s crimes were racially-motivated.  Therefore, evidence that appellant=s friend Brown sported racist
tattoos, that he was once arrested for painting over AMexican graffiti,@ and that he once claimed to follow AOdin,@ was irrelevant.

(4)     The
evidence was not necessary to show appellant belonged to a gang.

 

Brown
was not the person on trial; appellant was. 
Indeed, Brown never even appeared as a witness.  Yet two State witnesses and five defense
witnesses testified for no other reason than to provide evidence as to Brown=s
character.

Such
evidence was irrelevant to prove appellant committed the crimes in question.
Indeed, neither the majority nor the State cite authority for the proposition
that character evidence pertaining to someone not on trialCwho
is not even a witnessCis relevant to proving a defendant=s guilt.  Quite the opposite is true: Aevidence
as to character should be confined to the defendant=s
character alone, and the inquiry should not be extended to the character of
others connected with him or with whom he may associate.@  Holsey v. State, 5 S.W.523, 525 (Tex. Ct. App. 1887).  See also Gant v. State, 513 S.W.2d 52,
53 (Tex. Crim. App. 1974) (AIt
should be . . . obvious that the character of one=s associates is no evidence of guilt, and we have held that
such evidence should not be admitted.@).  

AGuilt by association@ has been rejected in Texas. 
Holsey,  5 S.W. at 525.  Indeed, the mere presence of an accused in
the company of another is not enough to connect a defendant to a charged
offense.  Wincott
v. State, 59 S.W.3d 691, 698 (Tex. App.CAustin
2001, pet. ref=d) (finding association with another may be offered as
corroborationCbut only when facts and circumstances sufficiently connect the
accused with commission of the crime).








When
gang evidence is admitted during trial, guilt by association becomes a Agenuine
concern.@  U.S. v. Irvin, 87 F.3d 860, 865 (7th
Cir. 1996) (finding abuse of discretion where Ahighly charged gang-affiliation@ was admitted to serve as a substitute for direct evidence
against a passenger in a stopped vehicle found to contain drugs); U.S. v. Polasek, 162 F. 3d 878, 887 (5th Cir. 1998) (noting
court had repeatedly characterized guilt by association evidence as Ahighly
prejudicial@).  

Texas
courts have been very careful when admitting skinhead and gang-affiliation
evidence during the guilt-innocence phase of trialCindeed,
they appear to have done so only when such evidence pertains to a defendant or
witness, not when it pertains to a defendant=s associates.  See
Vasquez, 67 S.W.3d at 239B40 (defendant=s Mexican Mafia affiliation admissible to show defendant=s
motive for killing victim); 
Williams v. State, 974 S.W.2d 324, 331 (Tex. App.CSan Antonio 1998, pet. ref=d) (defendant=s gang affiliation admissible to show defendant=s
motive to rob victim); McNight v. State,
874 S.W.2d 745, 747 (Tex.
App.CFort Worth 1994, no pet.) (defendant=s
and witness= gang membership admissible to show defendant=s
bias); Langley v. State, 723 S.W.2d 813, 817 (Tex. App.CTyler
1987, pet. ref=d) (defendant=s membership in Aryan Brotherhood admissible to show defendant=s
pre-existing relationship with fellow kidnapper). 

Here,
no evidence was admitted to show appellant belonged to a gang.  Thus, evidence that Brown was a
skinhead was irrelevant. 

(5)     The evidence was not necessary to place
appellant=s acts into context.  








It
is undisputed that character evidence of a defendant=s
membership or association with a gang and the gang=s
character and reputation are properly admissible during the punishment phase of
a trial.   Jones v.
State, 944 S.W.2d 642, 652B53
(Tex. Crim.
App. 1996).  During the
guilt/innocence phase of a trial, however, such evidence is generally
inadmissible unless it fits within the Asame transaction contextual evidence@
rule.  Pondexter
v. State, 942 S.W.2d 577, 583B84 (Tex.
Crim. App.
1996); Macias v. State, 959 S.W.2d 332, 339 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d).  

Under
the Asame
transaction contextual evidence@ rule, character evidence such as crimes, wrongs, or other acts
is admissible only when an offense would make little or no sense without it.  Pondexter, 942 S.W.2d at 584. 
Indeed, it is only in situations where there is no other reason for
defendant to have acted as he did to commit a crime that gang-affiliation evidence comes in during
the guilt-innocence stage of a trial.  Brumfield
v. State, 18 S.W. 3d 921, 925B26 (Tex. App.CBeaumont 2000, pet. ref=d) (emphasis added) (finding evidence
that defendant was member of Aryan Circle admissible to prove intent to work
together in continuing course of criminal conduct).

Here,
appellant=s assaults on Ponce and Simmons were not random acts of
violence.  Nothing suggests Ponce and
Simmons were targets of a drive-by shooting or predetermined plan; rather,
evidence suggests just the opposite: 
Simmons blocked Brown=s car and Brown and appellant were unhappy about it; SimmonsCan
acknowledged fighterChad six or seven beers the night in question and Ponce had
alcohol and cocaine in his system; Brown=s mother testified Brown had problems controlling his temper;
and Brown and appellant circled the parking lot to leave the store, but were
flagged down by Simmons.  

Because
evidence that Brown has tattoos and is a skinhead is not necessary to make
sense of appellant=s offense, such evidence was inadmissible during the
guilt/innocence stage of appellant=s trial.  See Pondexter, 942 S.W.2d at 584 (finding that A[h]ad
the State put on its case without . . . appellant=s connection with gangs, the jury surely would have had no
problems following and understanding the sequence of events of the night of the
murder@);
Macias, 959 S.W.2d at 339 (finding A[u]ndoubtedly the State could have
presented a clear and understandable case@ explaining appellant=s actions without interjecting Aunnecessary information@ about appellant=s gang-affiliation).








Finding
the State=s proffered evidence does not tend to make the existence of a
material fact more or less probable, it is my opinion that the trial court
abused its discretion in admitting the evidence about Brown and his
tattoos.  See Rankin, 974 S.W.2d
at 719 (op. on reh=g) (where State=s direct evidence clearly showed intent and was uncontradicted by defendant, offer of other crimes was
unjustified due to lack of relevance); Montgomery, 810 S.W. 2d at 391
(admission of extraneous acts was abuse of discretion where State had no
compelling need for the evidence to prove intent or shore up testimony); Owens
v. State, 827 S. W.2d 911, 916 (Tex. Crim. App. 1992) (extraneous offense evidence was inadmissible where only
fact to be resolved in aggravated sexual assault prosecution was whether
criminal offense occurred as alleged). 

HARM
ANALYSIS 

Although
it is my opinion that the trial court erred in admitting evidence of Brown=s
skinhead affiliations and racist activities, I believe the error was harmless. 

Where
error is not constitutional, we disregard it if it does not affect the
appellant=s substantial rights.  See
Tex. R. App. P. 44.2(b).  A substantial right is affected where the
error causes a substantial and injurious effect or influence in determining the
jury=s
verdict.  Morales v.
State, 32 S.W.3d 862, 867 (Tex.
Crim. App. 2000); King v. State, 953
S.W.266, 271 (Tex. Crim. App. 1997). 

After
a careful review of the record, the nature of the evidence supporting the
verdict, the character of the error, appellant=s defensive theory, and the amount of emphasis the State placed
on the error, it is my opinion that admission of Brown=s
skinhead affiliation and tattoos did not have a substantial and injurious
effect on the jury=s verdict.  See Motilla, 78 S.W.3d at 355.








First,
the improper admission of evidence does not constitute reversible error if the
same facts are proved by other properly-admitted evidence.  Brooks v. State, 990
S.W.2d 278, 287 (Tex. Crim. App. 1999).  Here, appellant himself provided much of the
evidence to which he now objects.[3]  Indeed, five witnessesCBrown=s
mother, two of Brown=s longtime Hispanic acquaintances, and two witnesses who were
in the convenience store at the time Brown allegedly made comments about APakistanis
and Jews@Cwere put on by the defense to address the issue of Brown=s
character. 

Next,
the evidence represented only a small part of the proof put on by the
State.  The State put on thirteen
witnesses and admitted 52 exhibits during five days of testimony.  The defense put on eleven witnesses and
admitted 30 exhibits.  Yet, the evidence
to which appellant now excepts encompasses less than
100 lines of prosecution testimony and only three photographs.  

Finally,
the injurious effect of the trial court=s errorCnamely, that the State was allowed to make racism a theme of
its caseCwas
likewise minimal.  While Brown=s
character evidence may potentially have diverted jurors from appellant=s
self-defense claim, appellant was not entitled to the defense.  Moreover, the State=s
evidence may have even helped appellant because appellant was able to
rebut State evidence with evidence of his own that Brown and appellant were not
racists.[4]  See e.g. Castaldo, 78 S.W.3d at 350B51
(acknowledging that while evidence defendant voluntarily rode with intoxicated
driver may have shown defendant to be reckless, it also helped the
defense because it showed the person who caused the accident was intoxicated
and a Abad
person@).








The
unchallenged evidence in this case permitted the jury to find all of the
elements of the charged offense.  This
evidence was not contradicted.  Given
this evidence, the jury was clearly not equally balanced on the issue of guilt
or innocence.  Indeed, nothing suggests
the jury would have come back with a different verdict Abut
for@
admission of Brown=s character evidence.  

Accordingly, it is my opinion that the
erroneous admission of Brown=s
character evidence was harmless.  Finding
no reversible error, I concur in the majority=s
judgment.

 

 

 

/s/        John
S. Anderson

Justice

 

 

 

Judgment rendered and Majority and
Concurring Opinions filed July 17, 2003.

Panel consists of Justices Yates,
Anderson, and Frost (Yates, J. majority).

PublishCTex. R. App. P. 47.2(a).

 











[1]  The
reasonableness of an accused=s belief that force was required to defend himself is viewed from the defendant=s standpoint at the time he acted.  Juarez, 886 S.W.2d
at 514.  See also Tex. Pen. Code Ann.
' 1.07(a)(42) (Vernon 1994) (AReasonable belief@ is Aa belief that would be held by an ordinary and prudent
man in the same circumstances as the actor.@)





[2]  Although
appellant received the Awindfall@ of an
instruction concerning self-defense in the jury charge, that
does not change the analysis.  See Mozon v. State, 991 S.W.2d 84,
848 n.1 (Tex. Crim. App. 1999) (Keller, J.,
dissenting).





[3]  Arguably,
appellant proffered this testimony to place objectionable State evidence into
context.





[4]  This
help was reflected in the minimal amount of weight the jury seemed to place on
the error.  Indeed, during the trial=s
punishment phase, the jury attempted to give appellant probation for both the
murder and aggravated assault.  It was
only after the jury=s initial
attempt to assess a Alight@
sentence failed, that jurors assessed punishment at 15 years=
confinement.  This suggests the juryCdespite
appellant=s failure to
produce evidence satisfying all the elements of self-defenseCremained
sympathetic to appellant.