TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00145-CR






Ronald Shawn Watkins, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 48,760, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING







 A jury convicted Ronald Shawn Watkins of aggravated sexual assault of a child. 
The jury assessed punishment at eight years in prison. Watkins raises three points of error on
appeal, challenging the admission of hearsay evidence, the allowance of a leading question, and
the submission of a portion of the jury charge. We will affirm the judgment.


BACKGROUND


 Kay, (1) the complaining witness, testified that Watkins assaulted her at a slumber
party at her friend Heather's house. Kay was eleven years old at the time of the assault and
twelve by the time of trial. Watkins was nineteen at the time of the assault and twenty by the time
of trial. Watkins was the boyfriend of Heather's sister, Melissa, at the time of the assault; Watkins
and Melissa were married by time of trial. Kay testified that she and Watkins were teammates in
a game of hide-and-seek. While they were "seekers" and counting down in a bedroom while
others went to hide, Watkins asked if she had seen a boy's private part. When Kay said no, he
asked her if she wanted to see one; though she said no, he then pulled down her pajama shorts. 
When she turned around, she saw he had pulled down his jeans, exposing his penis. She turned
away from him, pulled up her shorts, and continued with the hide-and-seek game. She testified
that the next time it was their turn to count, he pulled her pants down and put two of his fingers
inside her vagina. She told him to stop because it hurt. He stopped when she told him a second
time that it hurt. She went to the bathroom, wiped herself, and found spots of blood.

 Kay testified that she stopped playing hide-and-seek, ending the game, and started
playing puzzles with Heather. She told Heather what Watkins had done. While Heather went to
get Melissa, Watkins walked in the room and told Kay not to tell anybody. Kay started crying,
so Melissa told Watkins to leave the room; when he left, Kay told Melissa about the assault. 
Melissa told her the blood on the tissue might indicate that she had started her first menstruation. 
Kay testified that Watkins returned to the room and offered her $100 per month not to tell anyone. 
Kay said Melissa then warned her not to tell anyone because it would end Kay's friendship with
Heather and Kay's mother's friendship with Melissa.

 Kay telephoned her mother because she was upset and did not want to stay at the
party; during the call, however, Kay decided to stay because she was afraid she would not get to
see Heather again. Kay did not tell her mother about the assault during the call, and testified she
did not call her mother again. 

 Kay's mother, Dee, testified that Kay became troubled after the party. Contrary
to Kay's testimony, Dee said Kay called her crying on more than one occasion the night of the
party. She said that the day after the party, when Kay complained of vaginal pain but no further
bleeding, she investigated and saw a small, new-looking scratch inside Kay's vagina. When she
asked Kay what had happened, Kay said she did not know. Kay began having nightmares,
resumed wetting the bed, requested a night light, and became moody--all behavioral changes after
the party. Dee testified that, though Kay had wet her bed before, she had been treated medically
and had ceased for several months before the party. 

 Dee testified that, about a week after the party, Kay came to her, nervous and
wringing her hands. Kay opined that she had resumed wetting the bed because Watkins had
touched her. Over numerous objections, Dee testified that Kay related a sequence of events
describing the assault at the party almost identical to those about which Kay had testified at trial. 
After confronting Melissa and Watkins, Dee went to the police. The police report indicates Dee
told them that Kay told her that Watkins stopped touching her because another child's parents
came to pick up that child from the party. Dee did not seek a medical examination of Kay until
about a month after the incident. Dee testified that Kay had not had a menstrual period in the
eleven months between the party and the trial.

 The doctor who examined Kay a month after the incident testified that she believed
that Kay had not yet menstruated. She also testified that she found no physical evidence of sexual
assault, but that the amount of time that passed before she examined Kay could account for that.

 The police officer assigned to investigate the incident testified that Watkins called
her and told her that Kay's family had told him that they would not file charges if he went to
counseling; she was not completely certain that the caller was Watkins.

 Heather testified that Kay acted like Watkins was Kay's best friend, but Watkins
acted like they were just friends. Kay flirted with Watkins and, when he did not respond, she
became upset. One of the party games they played was Truth or Dare. Heather testified that,
while other dares were for someone to cluck like a chicken or bark like a dog, Kay dared Shawn
to kiss her two or three times. She said Kay insisted on being Watkins's partner in the hide-and-seek game. She testified that the seekers stayed in the bathroom (contrary to Kay's testimony that
they counted in a bedroom) and counted to twenty so that the hiders could hear them; she said she
heard Kay and Watkins counting. Heather also denied that Kay became upset or ended the game.

 Heather confirmed that, while they were playing puzzles, Kay became upset when
Watkins walked through the room. Heather testified Kay told her that Watkins had done
something to her and that she was scared. Heather said she took Kay to tell Melissa, and that Kay
started telling Melissa the story while Watkins was in the room; Heather said that Melissa then
told her and Watkins to leave the room. Heather also confirmed that Kay called her mom once. 
She said that Kay seemed pleased that Melissa would not speak to Watkins for the rest of the
evening, and that Kay wanted them to end their relationship. Heather said that later, in a game
where the girls pretended to be married, Kay pretended that Watkins was her husband. Heather
also testified that during the night she found Kay standing at the foot of Melissa and Watkins's
bed, looking at them.

 Heather said she noticed no change in Kay's behavior after the party. She said that
Kay expressed disappointment the next day that Melissa and Watkins had resumed talking. 
Heather said she encouraged Kay to tell her mother about the alleged assault, that no one
threatened that Heather would stop being her friend, and that no one offered to buy her silence. 
She talked to Kay only a few times after the party, and not about the incident.

 On cross-examination, Heather testified that Shawn said at the party, "If I did this,
I'm sorry." The State also introduced her statement to police that "Shawn said what [Kay] said
was true. He admitted everything." At trial, she explained that "Shawn had admitted it was true
because he knew he couldn't win against [Kay], because [Kay] was just a kid." 

 Dr. Fred Willoughby, a psychologist, testified about his examination of Watkins
made at defense counsel's request. The examination showed that Watkins had no sexual interest
in girls under the age of ten, and had interest in both fourteen-to-seventeen year-old girls and adult
females consistent with normal adult heterosexual males. Another test showed him to be
compliant and eager to please, fearful of losing relationships with people, and also slightly
suspicious and distrustful of others. On both direct and cross examination, Willoughby
acknowledged that the test did not necessarily predict past or future behavior, particularly in a
given instance, and that Watkins was aware of the charges against him when tested. Willoughby
emphasized, however, the inability of admitted pedophiles to distort the test results even when
instructed how to do so.


DISCUSSION


 Watkins contends that the trial court erred by admitting Dee's testimony regarding
what Kay told her, by allowing the State to ask Dee a leading question, and by improperly
commenting on the weight of the evidence during its jury charge. If the error defendant cites does
not affect constitutional rights, we can reverse the trial-court judgment only if the error affects the
substantial rights of the defendant. See Tex. R. App. P. 44.2.

 The trial court undisputedly did not admit Dee's testimony under the outcry
exception to the hearsay exclusion. Because Melissa, the first adult to whom Kay complained,
did not cooperate with prosecutors, Dee was the only adult who testified about Kay's report of
the incident to an adult shortly after it occurred. The court apparently accepted the State's
argument that Kay talked to Dee under continuing stress from the assault which she believed
caused her to resume wetting her bed, making her report of the assault an excited utterance. The
State also argued that her reporting of the bed-wetting was made for the purpose of medical
diagnosis or treatment. The State urges us to affirm the trial court's admission of that evidence
under either theory.

 We need not determine whether the court erred by admitting the evidence,
however, because we hold that Dee's testimony did not harm Watkins's substantial rights, even
assuming for purposes of this analysis that the trial court erred by allowing Dee to testify
regarding what Kay first told her about the assault. When examining the harm from an admission
of evidence, we must consider several factors; we must


examine the source of the error, the nature of the error, whether or to what extent
it was emphasized by the State, and its probable collateral implications. Further,
the court should consider how much weight a juror would probably place upon the
error. In addition, the court must also determine whether declaring the error
harmless would encourage the State to repeat it with impunity.



Pondexter v. State, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996) (quoting Harris v. State, 790
S.W.2d 568 (Tex. Crim. App.1989)). At issue is Dee's testimony relating what Kay told her
about the assault. The State did not emphasize this testimony; indeed, it scarcely if at all alluded
to the disputed testimony during argument. Before Dee testified, Kay had already testified in
detail about the nature of the assault. Dee's testimony did not add any information to Kay's
version of the assault. Further, Heather recounted a similar version of Kay's contemporaneous
post-assault actions and statements along with her evidence regarding Shawn's admissions. In this
context, we doubt the jury placed much weight on Dee's testimony. In the future, we trust the
State will not abuse the use of non-outcry testimony because it runs the risk under other
circumstances that we will declare the error harmful. On these facts, however, we overrule point
of error one.

 By point of error two, Watkins complains that the trial court improperly allowed
the State to ask Dee a leading question. During trial, the following exchange occurred between
the prosecutor and Dee:


Q. Describe how she was acting when she came up to you.


A. She was acting real nervous and she kept wringing her hands.


Q. Did she seem upset to you as a mom?


* * *



[after the court overruled the objection]



A. Yes.


Watkins contends this latter question was impermissibly leading. Texas Rule of Evidence 611(c)
states that "[l]eading questions should not be used on the direct examination of a witness except
as may be necessary to develop the testimony of the witness." We again decide whether the
question, if error, constituted reversible error.

 Watkins contends the error was harmful because the question led Dee to testify to
one of the elements necessary to substantiate admission of an excited utterance. We have
determined, however, that the admission of the purported excited utterance was not reversible;
the substantiation of the excitement prompting the utterance therefore cannot provoke reversal. 
More important, the question asked is redundant of the previous answer; the testimony that Kay
was "acting real nervous and kept wringing her hands" indicates even to someone not a mother
that Kay was upset. Dee's simple, one-word response to the question did not substantially add
to that testimony. Even if the question was improper, the court's refusal to disallow it did not
harm Watkins.

 By point of error three, Watkins contends that the court impermissibly commented
on the weight of the evidence by including the following passage in its charge:


A conviction of Aggravated Sexual Assault is supportable on the uncorroborated
testimony of the victim of the sexual offense if the victim informed any person,
other than the defendant, of the alleged offense within one year after the date on
which the offense is alleged to have occurred. The requirement that the victim
inform another person of the alleged offense does not apply if the victim was
younger than 18 years of age at the time of the alleged offense.



Watkins contends that this charge had the effect of highlighting Dee's testimony, thereby
bolstering Kay's testimony.

 We find no improper highlighting or bolstering effect. Although the instruction
was not tailored to the fact that Kay was younger than 18, this did not render it irrelevant. The
fact that Kay was younger than 18 means that her uncorroborated testimony could support a
conviction. See Tex. Code Crim. Proc. Ann. § 38.07 (West Supp. 1999); Heckathorne v. State,
697 S.W.2d 8, 13 (Tex. App.--Houston [14th Dist.] 1985, pet. ref'd) (interpreting precursor
statute requiring corroboration of testimony beginning with 14-year-olds). The instruction is
authorized by the statute and might have been useful to the jury in resolving the conflicting
testimony. We overrule point three.


CONCLUSION


 Having overruled all three points of error, we affirm the judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: October 14, 1999

Do Not Publish
1. Kay is a pseudonym used only in this opinion.



ading question. During trial, the following exchange occurred between
the prosecutor and Dee:


Q. Describe how she was acting when she came up to you.


A. She was acting real nervous and she kept wringing her hands.


Q. Did she seem upset to you as a mom?


* * *



[after the court overruled the objection]



A. Yes.