

# IN THE
# TENTH COURT OF APPEALS

### No. 10-23-00246-CR

**RALPH CHRISTOPHER WHITE, JR.,**

                                       **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                       **Appellee**

---

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. D41517-CR

---

## MEMORANDUM OPINION

---

A jury convicted Ralph Christopher White, Jr. of aggravated sexual assault of a child, enhanced with a prior felony, and assessed punishment at confinement in prison for life. Because the trial court did not abuse its discretion in admitting an extraneous offense over White's objections, the trial court's judgment is affirmed.

**BACKGROUND**

In 2018, White moved in with his cousin, Jacqueline English, for about three weeks because he had no place else to live. Also living in the home was then 13-year-old D.S.

During this stay, White sexually assaulted D.S.  D.S. recalled that the offense occurred the day before White was taken to the hospital by a fire department for an incident occurring in her mother's bathroom.  D.S. initially told her cousin that White had rubbed her foot, making her feel uncomfortable.  However, she did not outcry in full until years later in late October of 2021.

**EXTRANEOUS OFFENSE EVIDENCE**

In two issues, White complains that the trial court abused its discretion when it admitted extraneous evidence of drug use by White in violation of Texas Rules of Evidence 403 (Issue 1) and 404(b) (Issue 2).  TEX. R. EVID. 403; 404(b).  The challenged extraneous drug use was mentioned in a videotaped interview of White at the jail:

> [OFFICER]:  There was an outcry of sexual abuse that [D.S.] made against you.  It looks like…do you remember that…do you have any recollection of anything like that happening?
>
> [WHITE]:  No, ma'am.
>
> [OFFICER]:  Do you remember back in 2018 *when you did ICE a lot*?
>
> [WHITE]:  Yes.
>
> [OFFICER]: It's probably going to be right around that time.  Could you envision yourself doing something like that *on ICE*?
>
> [WHITE]:  No, no.  I know what she's talking about.  I know what had happened was I know what had happened was, I wait for everybody to go sleep and I was watching something on TV.  I was watching HBO/CINEMAX and she walked into the living room.  That's it.  That is it.
>
> [OFFICER]:  That's not what she told me...do you remember when you went to the hospital?
>
> [WHITE]:  Yes.

[OFFICER]: Right around that time is when she said that you ...

[WHITE]: How did I do? How is that?

[OFFICER]: I don't know. *Is there a point that you were on any type of drugs where you wouldn't remember that day*?

[WHITE]: Yes, I remember everything. I stayed with them. Oh my God….

\*\*\*

[WHITE]: Come on now... I would never do that...*I got high*. But I never did that….

(Emphasis added).

The video was admitted into evidence over White's Rule 404(b) and Rule 403 objections. We review a trial court's decision to admit or exclude extraneous offense evidence under Rules 404(b) and 403 for an abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

### *Rule 404(b)*

We begin our review with White's second issue: whether the trial court abused its discretion by allowing the State to use extraneous drug evidence to prove character conformity. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.[1] TEX. R. EVID. 404(b)(1). It may, however, be admissible for other purposes, such as proof of motive,

---

[1] Rule 404(b) is a rule of inclusion rather than exclusion and excludes only that evidence that is offered, or will be used, solely for the purpose of proving bad character and conduct in conformity with that bad character. *De La Paz*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id*. (b)(2). These "exceptions" are neither mutually exclusive nor collectively exhaustive. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Pondexter v. State*, 942 S.W.2d 577, 583-84 (Tex. Crim. App. 1996). There are many other uses for evidence of criminal acts. *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex. Crim. App. 1990) (op. on reh'g).

D.S.'s mother, Jacqueline English, was the first State's witness. English told the jury D.S. had blurted out that White had "raped" her while English was discussing another matter with D.S. Later, D.S. told English that the sexual assault occurred the night before White had gone to the hospital. English remembered when that occurred because it had been a stressful day: White had been in their bathroom for hours and English had to call 9-1-1. English related what D.S. eventually told her:

> [D.S.] said she got out of bed, went to the living room to watch cartoons. She said eventually, [White] came in and he spoke to her. He walked to the kitchen or restroom, came back, and sat down. Said that he touched her foot, and she kicked him away and said, "Stop." Then after that, he grabbed her by her ankles and pulled her towards him. And she said that he raped her. She did not go into detail with me.

D.S. corroborated her mother's account of when the assault occurred.

The investigating officer, Det. Whitney Hawk, confirmed that White had been taken to the hospital by the Fire Department on a particular date. When Hawk later spoke with White about D.S.'s outcry, White initially had no recollection of a sexual assault, or "anything like that," happening. Hawk used White's prior drug use and the concurrent trip to the hospital to successfully jog White's memory. White then explained what

happened, using some of the same details as D.S. leading up to the sexual assault yet denying sexually assaulting D.S.

The State argued, and the trial court agreed, that the evidence was admissible for the purpose of showing time and place. Based on our review of the record, we agree with the trial court's determination and conclude the record supports the admission of White's extraneous drug use to prove time and place; not simply to show White's criminal character. Accordingly, the trial court did not abuse its discretion, and White's second issue is overruled.

### Rule 403

White also argues the trial court abused its discretion in admitting the same extraneous drug evidence because it was more prejudicial than probative. *See* TEX. R. EVID. 403. Texas Rule of Evidence 403 allows the trial court to exclude evidence that may be otherwise relevant "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.* To determine whether evidence is admissible under Rule 403, we use the *Montgomery* factors: (1) the strength of the evidence's probative value, (2) the potential for the evidence to "impress the jury in some irrational but nevertheless indelible way," (3) The amount of time required at trial to develop the evidence, and (4) the proponent's need for the evidence. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024); *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (op. on reh'g).

English and D.S. testified as to where and when the sexual assault took place. By

jogging White's memory with his prior drug use, White corroborated D.S.'s and English's testimony. Importantly, White's corroboration occurred without Hawk giving White any details of the sexual assault and after White telling Hawk he had no recollection of "anything like that" happening. Thus, not only was the extraneous evidence probative because it led to the establishment of time and place, but it was also necessary as support for the State's argument that D.S.'s version of the events was credible while White's version was not.

Further, the presentation of the evidence did not take much time to present. The introduction of the video, including publishing it to the jury in segments along with testimony by Hawk, took only three pages out of Hawk's 22 pages of testimony. Likewise, the potential for the evidence to "impress the jury in some irrational but nevertheless indelible way" was low. After the introduction and publication of the video to the jury, White's former drug use, the type of drug he used, or whether he was high, was not discussed or mentioned again until in the State's final argument. And then, the State only mentioned it to show that regardless of doing drugs or possibly being high, White remembered what had occurred and had access and opportunity to sexually assault D.S.

Thus, after weighing the *Montgomery* factors, we conclude that a balance of the factors shows the trial court did not abuse its discretion in finding the probative value of the extraneous drug evidence outweighed the danger of unfair prejudice to White.

White's first issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgment.

LEE HARRIS
Justice

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Opinion delivered and filed February 27, 2025
Do not publish
[CRPM]

